J. R. WATKINS *vs.* C. O. LANDON *et al.*

Argued Dec. 1, 1892. Decided Jan. 28, 1893.

**Trade Name of an Article not Patented.**

Any person lawfully acquiring a knowledge of the composition of any medicinal preparation, not patented, has the legal right to manufacture and sell the same, if, by reason of the manner in which such knowledge is acquired, that would not constitute a breach of confidence or good faith.

**Same—Any Manufacturer May Fairly Use.**

He may also publish the fact that his product is made in accordance with the original formula therefor.

**Same—But has no Exclusive Right to the Trade Name.**

When such a preparation has come to be popularly known by the name of a person, (*e. g.* " *Ward's* Liniment,") another person engaging in the manufacture has no right to appropriate that name to his own exclusive use as a proprietary trade-mark or trade-name.

**Same—Damages Under Laws 1885, ch. 178.**

In an action to recover *damages* for the wrongful use of a trade label resembling that of the plaintiff, the plaintiff is not entitled, in the absence of proof of the measure of damages, to recover the *penalty* prescribed in Laws 1885, ch. 178.

**Newly-Discovered Evidence.**

Refusal to allow new trial for alleged newly-discovered evidence sustained.

**Findings Justified by the Evidence.**

Evidence held to justify findings.

Appeal by plaintiff, J. R. Watkins, from an order of the District Court of Wabasha County, *Start,* J., made May 26, 1892, denying his motion for a new trial.

In 1856, Richard Ward, of Harrison, Ohio, had a formula or receipt for making a liniment which he called Ward's Botanical Liniment. On July 16, 1856, in consideration of five dollars, he imparted to J. H. Sands the formula for making the liniment, and signed and delivered to him a certificate of which the following is a copy:

"Pennsylvaniaburg, July 16, 1856.

"This is to certify, that I, Richard Ward, have sold to J. H. Sands the whole sole right of Minnesota territory, to make and sell Ward's Liniment.                                                  R. Ward."

Sands located in Winona, and manufactured and sold the liniment in Minnesota under the trade-mark and designation of, "Dr. Ward's Celebrated Liniment." The preparation came to be known in Minnesota as "Dr. Ward's Liniment," and has since 1860, been known by that name.    On February 27, 1889, J. H. Sands imparted the formula to the defendants C. O. Landon, G. C. Landon and C. D. Burchard of Plainview, Minnesota, partners doing business under the firm name of Landon & Burchard, and sold to them the right to make and sell the liniment in this state.    In 1867, plaintiff made an agreement with Ward that he (Ward) should procure the liniment to be patented, and sell to plaintiff the right to manufacture and sell it in Minnesota, Iowa and Wisconsin; and he procured from Ward the formula for making it, and has ever since manufactured and sold it in this state under the name of "Dr. Ward's Vegetable Anodyne Liniment." Other facts are stated in the opinion.    In May, 1891, plaintiff commenced this action to enjoin defendants from making or selling Dr. Ward's Liniment or Dr. Ward's Vegetable Anodyne Liniment, or any imitation thereof, and from representing any preparation made by them to be plaintiff's preparation, and for $4,000 damages.

The issues were tried in November, 1891, before the court without a jury.    Findings were made that the defendants had the right to manufacture liniment from the formula of Richard Ward and to sell it in Minnesota as Dr. Ward's Liniment, but they were required to change the label used by them upon the bottles so as to read, "Dr. Ward's Liniment, manufactured and sold by Landon & Burchard, Plainview, Minnesota," and judgment was ordered accordingly, with costs, but without damages, as no actual damages were proved. Plaintiff moved for a new trial, and being denied, appeals.

*Keyes & Brown,* for appellant.

*Finkelnburg & Lees,* for respondents.

DICKINSON, J. The plaintiff complains of an infringement of what he claims to be a proprietary trade-mark, and of unfair competition in trade. The facts of the case, as determined by the trial court, may be stated as follows:

In 1856, and prior thereto, one Ward, called Dr. Ward, although he was not a physician, residing in the state of Ohio, made and sold, under the name of "Ward's Botanical Liniment," a medicinal compound, prepared in accordance with a formula or receipt owned by him. In that year he sold and imparted to one Sands the formula for making the liniment, with "the whole sole right of Minnesota Territory, to make and sell Ward's Liniment therein." Sands thereafter manufactured and sold the liniment in this state, under the label and designation of "Dr. Ward's Celebrated Liniment." This was continued several years, until 1868, when, not voluntarily, but induced by threats of prosecution by the plaintiff, who then claimed the sole right to make and sell Ward's Liniment in this state, he changed the label on the liniment made and sold by him to "T. H. Sands' Celebrated Liniment," and under that designation he continued the manufacture and sale until February, 1889. *The preparation came to be known as "Dr. Ward's Liniment" prior to 1860, and has ever since been so known.* In 1867 the plaintiff agreed with Ward that the latter should procure his liniment to be patented, and should sell to the former the right to manufacture and sell the same in this and some other states, for which a stated consideration was to be paid. A part of the agreed consideration was then paid, and the formula was disclosed to the plaintiff. But the liniment was never patented. The plaintiff then commenced to manufacture and sell the preparation in this state, under the designation of "Ward's Celebrated Liniment." Since 1870 he has manufactured and sold a liniment, the formula of which is substantially the same as that used by Ward. He has sold this under the designation of "Dr. Ward's Vegetable Anodyne Liniment," which he now claims as a trade-mark. By this name and designation the liniment manufactured by the plaintiff has become widely and favorably known, so that his trade therein has become profitable.

From 1870 to 1885 the defendants purchased liniment from the plaintiff in bulk, and sold it at retail, using thereon the label "Dr. Ward's Liniment, Landon & Burchard, Druggists, Plainview, Minnesota," and it came to be known that the liniment so sold by them was· made by the plaintiff.

Subsequent to 1885 the defendants manufactured and sold a liniment similar to Ward's and labeled "Dr. Hoffman's Vegetable Anodyne," with their firm name added. In other respects the labels so closely resembled those used by the plaintiff that they were calculated to induce ordinary purchasers to believe that the preparation was the plaintiff's manufacture.

In 1889, Sands sold and imparted to the defendants the formula purchased by him from Ward, with the right to make and sell the same in this state. Since that time the defendants have manufactured according to that formula, and have sold the product under the label "Dr. Ward's Liniment, Landon & Burchard, Druggists, Plainview, Minnesota."

In 1890 certain persons (Batterton Bros.) purchased from Ward whatever rights he had, and in 1891 the plaintiff succeeded to the rights of such purchasers.

The court granted to the plaintiff appropriate relief as respects the use by the defendants in the future of labels resembling those of the plaintiff. The further questions presented on this appeal by the plaintiff are whether the defendants have the legal right, as against the plaintiff, to make and sell the compound according to Ward's formula, and under the name of "Dr. Ward's Liniment;" and whether the evidence in this case was such as to entitle the plaintiff to recover substantial damages. It should be further stated that while the decision under review permits the defendants to use a label designating their preparation as "Dr. Ward's Liniment," they are required to add the statement that it is manufactured by them, and to avoid the use of labels resembling those of the plaintiff.

This preparation never having been patented, and Sands, and through him, these defendants, having lawfully and fairly acquired knowledge of its composition, they have the legal right to manufac-

ture and sell it, following Ward's formula. See authorities cited below. They may, too, by label or otherwise, publish the truth, that their compound is made in accordance with Ward's formula; and this may be by a formal statement to that effect, or by more brief terms of similar import, such as those which, by the decision under review, the defendants are permitted to employ, viz. "Dr. Ward's Liniment, Manufactured and Sold by Landon & Burchard," etc. *Chadwick* v. *Covell*, 151 Mass. 190, 192, (23 N. E. Rep. 1068;) *Marshall* v. *Pinkham*, 52 Wis. 572, (9 N. W. Rep. 615;) *Massam* v. *J. W. Thorley's Cattle Food Co.*, 6 Ch. Div. 574; *James* v. *James*, L. R. 13 Eq. Cas. 421; *Singer Manufacturing Co.* v. *Loog*, L. R. 8 App. Cas. 15, 27; *Singer Manufacturing Co.* v. *Wilson*, 2 Ch. Div. 434, and same case on appeal, L. R. 3 App. Cas. 376, 384, 385, 398, 399. While the decision last cited reverses that preceding it upon points relating to the evidence, the principle to which we cite these authorities is recognized at the pages above given.

Even if, under other circumstances, the plaintiff might have rightfully appropriated exclusively to his own use the name of Ward as a part of a trade-mark or trade-name, so as to have excluded others from using it, as a means of declaring the fact that the compound put forth by them was made according to the formula of Ward, a controlling fact, to which we have called attention by the use of italics in the statement of the case, forbade his doing so in this case. This preparation had been for many years known as "Dr. Ward's Liniment," when the plaintiff commenced the use of that name in connection with the business. Sands had long rightfully made and sold it under that name, and had the right to continue to do so. He had contributed, as may be presumed, to the popular association of that name with the remedy, and to make the name peculiarly valuable to any manufacturer who might appropriate it exclusively to his own use.

The name had thus practically come to be one *descriptive* of this preparation, and, having acquired that quality, the plaintiff had no right to withdraw it from further use by Sands, or by any other person who might lawfully manufacture the same liniment, and appro-

priate it to his exclusive use, so as to give him a practical monopoly in the sale of the preparation which he had no exclusive right to make or sell. *Canal Co.* v. *Clark*, 13 Wall. 311; *Stachelberg* v. *Ponce*, 128 U. S. 686, (9 Sup. Ct. Rep. 200;) *Van Beil* v. *Prescott*, 82 N. Y. 630; *Marshall* v. *Pinkham, supra.*

It is of little importance that, by reason of the plaintiff's threatened prosecution of Sands, and of the inability of the latter to enter into litigation, as he testifies, Sands had discontinued the use of the name of Ward. The manufacture and sale of the liniment was continued, and it continued to be known as "Dr. Ward's Liniment" down to the time when the plaintiff sought to appropriate those words to his exclusive use. He had no right, by such an appropriation of the common name of this remedy, of established reputation, to deprive other manufacturers of the benefits of that name as properly and truly designating the article manufactured by them. Sands had the right to resume the use of the name which the plaintiff had no right to appropriate after it came to be the common name for the liniment.

There is no proof of the amount of damage which the plaintiff may have suffered from the partial resemblance to the plaintiff's label of the label formerly used by the defendants, bearing the words "Dr. Hoffman's Vegetable Anodyne," but it is contended that, even in the absence of such proof, damages should have been awarded to the extent of $100, pursuant to Laws 1885, ch. 178, § 4. But it is only in cases where the person imitating the label or trade-mark of another does so with the fraudulent intent expressed in that section, and which is there declared to be criminal, that such a statutory penalty is recoverable. The court has not found that the defendants were actuated by a fraudulent purpose, and the evidence did not require such a conclusion; hence the plaintiff cannot prevail in this particular. The fact that the action is not for the recovery of the penalty would lead to the same conclusion.

For the reasons assigned by the learned judge of the district court as to the claim of newly-discovered evidence, we do not think that he erred in his refusal to accept that as a sufficient ground for allowing a new trial.

·· We deem the findings of fact justified by the evidence. Upon some other matters referred to in the briefs comment is unnecessary.
Order affirmed.

(Opinion published 54 N. W. Rep. 193.)