GEORGE C. LANDON and Another v. J. R. WATKINS.[1]

May 22, 1895.

Nos. 9162—(32).[2]

**Libel.**

In determining whether a publication is libelous per se, the headlines of the same cannot be disregarded, for in them is frequently found the "sting" of the publication.

**Same.**

*Held*, that each of the circulars published by defendant, and made the foundation of plaintiff's first and third causes of action, was a libel on its face.

**Slander of Title.**

It was a question for the jury to determine from the evidence, and under proper instructions by the court, whether the sending out of the notice made the basis of plaintiff's fourth cause of action was a slander on plaintiff's right and title to manufacture and sell "Dr. Ward's Liniment," a property right.

**Libel—Loss of Trade.**

When the injury complained of in an action for a libel is a loss of trade, a general allegation of such loss is sufficient in ordinary cases, and such allegation may be supported by evidence of such general loss.

[1] Reported in 63 N. W. 615.                    [2] April, 1895, term calendar.

Same—Privilege.

Application of the rule that, when a publication goes beyond the occasion, it exceeds the privilege.

Rulings on Evidence.

Certain rulings on the admission and rejection of testimony occurring on the trial considered and disposed of.

Appeal by defendant from an order of the district court for Winona county, Start, J., denying a motion to set aside a verdict for $1,000 in favor of plaintiff and for a new trial.    Affirmed.

Exhibits A, B, and C, referred to in the opinion, read as follows:

### EXHIBIT A.

BEWARE OF COUNTERFEITS
and
BASE AND DANGEROUS IMITATIONS
of our well-known
DR. WARD'S VEGETABLE ANODYNE LINIMENT.

To the Public:  Please consider the following sworn statement of Richard Ward, before investing in any doubtful medicine purporting to be "Dr. Ward's Liniment":

"DR. WARD'S VEGETABLE ANODYNE LINIMENT"

is the full name, and J. R. Watkins of WINONA, MINNESOTA, THE SOLE AND ONLY PROPRIETOR and successor to Richard Ward.

See that my name and this trade-mark DR. WARD'S is blown in every
Trade-Mark
bottle, and take no substitute.

J. R. WATKINS,
Sole Proprietor of Dr. Ward's Remedies,
WINONA, MINNESOTA.

To the Patrons of Dr. Ward's Vegetable Anodyne Liniment:

I, Richard Ward, known also as Dr. Ward, of Charlottesville, Hancock county, state of Indiana, am the same Ward who for many years made and sold an article of proprietary medicine known as "Ward's Celebrated Liniment." About two years since my attention was called to the fact that a certain firm of druggists, residing in Wabasha county, state of Minnesota (meaning these plaintiffs), were taking the unwarranted liberty of using my name in connection with a liniment the formula of which I never used or acknowledged as my own.

In July, 1856, I met a poor crippled preacher on his way to Minnesota, and out of pity for his forlorn condition I gave him a formula for a certain lini-

ment then in use, known as "Dr. Wilson's Botanical Liniment." This Dr. Wilson-Sands' Liniment contains LARGE QUANTITIES OF TURPENTINE, and in color and appearance is calculated to deceive when substituted for Dr. Ward's Vegetable Anodyne Liniment, manufactured by J. R. Watkins, of Winona, Minnesota. I consider medicine made from this Dr. Wilson receipt as entirely unfit for internal use, and for such it was never recommended.

On a certain day of April, 1892, in the office of Justice Staley, in Charlottesville, Indiana, I was shown this Wilson formula with a certain "right" attached, which read as follows:

"Pennsylvaniaburg, July 16, 1856.

"This is to certify that I, Richard Ward, have sold to J. H. Sands the whole sole right of Minnesota territory, to make and sell 'Ward's Liniment.'

"R. Ward."

I hereby denounce in the most unmeasured terms every word of the above, including the signature, as a FRAUD and a FORGERY. (Meaning thereby and intending to convey the impression that these plaintiffs had unlawfully forged the written instrument above referred to as a "right," and meaning that these plaintiffs had forged the signature attached thereto.) It is not in my handwriting, nor did I ever authorize any one to write it for me. I also know that the name "Wilson's" in the formula has been changed to read "Ward's."

I take this opportunity to inform the patrons of DR. WARD'S VEGETABLE ANODYNE LINIMENT that I recognize J. R. WATKINS, OF WINONA, MINNESOTA, as my sole and only successor to all the rights I ever had in Ward's Celebrated Liniment; and that I have made over to said J. R. WATKINS, in due form, the WORLD-WIDE RIGHT to use my name as a TRADE-MARK in connection with a full line of medicines, and that I have never authorized any one else to so use my name.

I have no personal interest in making the above statement, except to further the ends of justice, and to keep the public from being imposed upon. (Meaning thereby that these plaintiffs were and are wrongfully and fraudulently deceiving and imposing upon the public in the course of their trade and business hereinabove referred to.)                     Richard Ward.

Signed in the presence of
    W. R. McGraw,
    B. F. Stinger,
        Witnesses.

---

State of Indiana, }
County of Hancock, } ss.

Before me, a justice of the peace, personally appeared Richard Ward, who, being first duly sworn, acknowledged that he did voluntarily sign the foregoing document, and that every statement therein contained is true, to the best of his knowledge and belief.

In testimony whereof, I have hereunto set my hand and official seal, this seventh day of February, A. D. 1893. Sylvanus C. Staley [Seal.]
Justice of the Peace.

### EXHIBIT B.

### BEWARE OF COUNTERFEITS·

And Base and Dangerous Imitations of our well-known

### DR. WARD'S VEGETABLE ANODYNE LINIMENT.

I take this opportunity, with deep regret and in sheer self-defense, to expose to the public the actions of a certain firm hailing from the village of Plainview, where I formerly resided, and who claims the "right" to make and sell "Dr. Ward's Liniment" in the state of Minnesota. The fact has been known to all who reside in their neighborhood that for several years Landon & Burchard have been preying upon the well-earned reputation of our liniment. Finally the matter came before the court at Wabasha in November, 1891, when L. & B. were found guilty, and judgment given to us on common-law grounds. Also, they were left in for all costs and disbursements, which probably will aggregate but little less than $1,000. The court enjoins them from selling their liniment in bulk, or as "Hoffman's Anodyne," or in bottles with wrappers similar to ours, or substituting the same for our liniment, or in any way to deceive the public and make them believe they are getting goods of our manufacture. Further, the court finds that the formulas of the two medicines in question are not the same. I have a copy of their formula, and note, among other radical differences from our formula (which is private and undisclosed), one and one-half gallons of turpentine to the barrel of their liniment. This formula that L. & B. advertise as "genuine" was obtained by them through an old-time neighbor of Richard Ward, and is one discarded by him (Ward) about forty years ago. This man claims to have bought, in 1856, the formula and the right to use said Ward's name in connection with the manufacture and sale of this liniment in Minnesota for the magnificent sum of $5.00. However, please bear in mind that this matter is still in court, and, should the supreme court sustain our trade-mark, may yet prove a very serious matter.

Yours for fair and square dealing,

J. R. WATKINS,

Proprietor of Dr. Ward's Vegetable Anodyne Liniment.

Winona, Minn., February 15, 1892

### EXHIBIT C.

~~DR. WARD'S~~

Registered Trade-Mark No. 23,585.

DR. WARD'S

Registered Trade-Mark No. 23,585.

CAUTION: Both of the above trade-marks have been registered in the United States patent office, at Washington, D. C. Any infringement will be promptly prosecuted in the U. S. courts. Take timely warning.

In the fourth cause of action, referred to in the opinion, plaintiffs in substance alleged that they had the right to make and sell Dr. Ward's Liniment throughout Minnesota; that certain described persons were regular customers of plaintiffs and habitually purchased from them large quantities of said liniment; that defendant with knowledge of said facts, intending to injure plaintiffs in their business and to deprive them of the profits thereof, etc., sent to said persons and others a certain notice (Exhibit C), intending and meaning thereby, etc., that defendant had the sole right to use the words "Dr. Ward's" in connection with the sale of liniments, or otherwise, within the United States, and that such words constituted a valid trade-mark belonging to defendant, and that any person keeping or selling liniment called "Dr. Ward's," which had not been made by defendant, would be prosecuted for infringement of trade-mark, whereas in fact defendant had never had the sole right, etc., and had never had a trade-mark composed of said words, all of which was well known to respondent and was unknown to the persons receiving said notice; that by reason thereof, etc., said persons ceased to purchase plaintiffs' liniment, and plaintiffs were deprived of the profits which they would otherwise have realized from said sales to their damage $2,000.

*Pfau & Young* and *Brown & Abbott*, for appellant.

*Finkelnburg & Lees* and *P. Fitzpatrick*, for respondents.

COLLINS, J.[2] This was an action for libel in which plaintiffs had a verdict. The appeal is from an order denying defendant's motion for a new trial. Five separate causes of action were set out in the complaint, but at the trial the second and fifth were abandoned. Pending a hearing in this court of another case between these same parties, reported in 52 Minn. 389, 54 N. W. 193, the defendant published a circular (Exhibit B) relating to the manufacture and sale of the liniment mentioned in that case, in which manufacture and sale plaintiffs were then engaged. The plaintiffs, claiming this publication to be libelous, made it the foundation for their first cause of action. Later, defendant issued and published another circular (Exhibit A) of the same import, and relating to the same subject, and this publication is made the basis for the

---

[2] Start, C. J., having tried the case in the district court, took no part.

third cause of action. Soon afterwards, defendant sent to certain persons who were purchasing Dr. Ward's liniment from plaintiffs a notice (Exhibit C) relating to such liniment, which notice the latter claim was a libel on their property rights, and, alleging special damages, they made these acts their fourth cause of action. The defendant admitted that these circulars and the notice were published and sent out of and concerning the plaintiffs. At the trial his justification was that the statements contained in the circulars and notice were true, and also that they were privileged in their character.

1. The first question is whether the circulars referred to in the first and third causes of action were libelous per se. The court below charged the jury that they were. Both had the same displayed headlines, as follows: "Beware of Counterfeits and Base and Dangerous Imitations of our well-known Dr. Ward's Vegetable Anodyne Liniment." Then followed direct as well as covert references to the plaintiffs, whereby there was charged upon them base and dishonest practices and conduct in the manufacture and sale of what was known as "Dr. Ward's Liniment." As was said by the court below, the headlines are an important part of the publication, and cannot be disregarded, for they often render a publication libelous on its face which without them might not necessarily be so. Hayes v. Press Co., 127 Pa. St. 642, 18 Atl. 331. See, also, other cases cited in note to McAllister v. Detroit Press Co., 76 Mich. 338, 15 Am. St. Rep. 347, 43 N. W. 431. In these headings to publications we frequently find the "sting." Taking those in question with the language used in the body of each circular, we think it clear that they are reasonably capable of but one meaning; namely, that plaintiffs were guilty of wrongfully and fraudulently counterfeiting and imitating the liniment made and sold by the defendant, and were engaged in base and dishonest efforts to palm it off on the public as the genuine article.

2. The notice the circulation of which was made the foundation for the fourth cause of action contained facsimiles of what defendant claimed were his trade-marks (two in number) for Dr. Ward's medicines, together with a caution that, as each had been registered, any infringement thereupon would be promptly prosecuted, and to "take timely warning." The plaintiffs claimed that this

was a slander of title, and the complaint contained all allegations necessary to sustain an action of this nature, and there was evidence tending to support the allegations. The jury was charged that Exhibit C was not a libel on its face, and with proper instructions as to what would amount to a slander on the right of title plaintiffs had to manufacture and sell Dr. Ward's liniment, and that special damages must be shown to entitle them to recover on this cause of action, the question was submitted. This was correct. With these remarks, we have disposed of all assignments of error bearing on the contention of defendant's counsel that the complaint failed to state facts sufficient to constitute a cause of action in any of its parts.

3. Counsel for defendant urge that there was error in the admission of evidence tending to show a falling off in plaintiffs' sale after the publications. Under proper allegations in the complaint, —and there were such in this,—evidence of general diminution of profits and a loss of trade is admissible in an action for libel. Newell, Defam. 864; Folkard's Starkie, Sland. & L. 313, 486. When the injury complained of is a loss of trade in ordinary cases from a libel, a general allegation of such loss is sufficient, and such allegation may be supported by evidence of such general loss. Weiss v. Whittemore, 28 Mich. 366; Bergmann v. Jones, 94 N. Y. 51. The trial court did not err in this respect.

4. Defendant offered to show by one of his witnesses that while one of plaintiffs' agents was selling the liniment made by them, and prior to the publication of the first circular, the agent represented to the witness that he was an agent for defendant, and selling liniment for him; that the witness had used defendant's liniment for years; and that he purchased a bottle relying upon these representations. The evidence was excluded, and this is made the subject of the tenth assignment of error. The court held the evidence inadmissible, unless it was first shown that plaintiffs authorized the alleged misconduct, or unless it was first shown that defendant had been informed of it before he published the circular. We need not decide whether the first part of the alternative proposition was right or wrong, for if either party was prejudiced by it, it was the plaintiffs, not the defendant. The latter part of the proposition was strictly correct. If the proposed evidence was admissible at

all, it was on the question of privilege. If the defendant did not know of this improper conduct on the part of the plaintiffs' agent when he sent out the circular, he was not prompted or induced thereby to act. He could not have believed in or relied upon statements and acts of which he had no knowledge. The misconduct of the agent did not influence defendant to make the defamatory charge found in the circular, and the offered testimony in no manner tended to prove that it was made in good faith and in the honest belief that it was true. For these reasons it was inadmissible, without a further showing. Quinn v. Scott, 22 Minn. 456. As a matter of fact, defendant did produce evidence going to show that, before he issued the circular, he was informed, believed, and acted upon information which had come to him of the same general nature as that proposed to be shown.

5. When charging the jury, the court gave several of defendant's requests pertaining to privileged communications, with the qualification, however, that to be privileged, a communication or publication must be relevant and proper to the facts in hand. Unquestionably, it was defendant's right to send out circulars containing such language as would advise his customers and put them on their guard against imitations, but the right or privilege was limited to the reasonable necessities of the case. He had no right to include in such circulars irrelevant and libelous matter, not warranted by the circumstances which had called them out. A publication which goes beyond the occasion exceeds the privilege. Quinn v. Scott, supra. This was the substance of the qualification, and the court was clearly right; and, under the testimony, the question whether or not the communications were privileged was for the jury, not for the court.

We see no error in any of the rulings of the court when receiving evidence, and it is apparent that the law of the case was submitted to the jury in an exceedingly concise and accurate manner.

Order affirmed.