(Superior Court of Cincinnati.)
General Term.

SUSAN L. WINSLOW v. THE CITY OF CINCINNATI.

---

*Dedication of street—What sufficient in Adverse Possession.*

1. The dedication of a street according to the formalities of the statute is not an exclusive method of dedication in Ohio, but a dedication may be made according to the rules of the common law.

2. Under a common law dedication, "no particular word or ceremony or form of conveyance is necessary to render the act of dedicating the land to public uses effectual. Anything which fully demonstrates the intention of the donor or the acceptance by the public works that effect."

3. There is no established standard by which the use necessary to determine an acceptance by the public may be measured and declared to be sufficient; a use which would naturally follow from the character of the place and the settlement of the community is sufficient.

4. The doctrine that adverse possession can be established by fencing in a public highway has been greatly modified in Ohio. The tendency of the later decisions, is to

hold that adverse possession to be effective must have its basis in Equitable Estoppel.

5. Section 2650 Rev. Stat. providing that no street or alley dedicated to public use shall be deemed a public street or alley until acceptance, by an ordinance passed for such purpose, was not intended to deprive the public from asserting its rights to streets which have become such under common law dedications, but to prevent proprietors of ground from laying out streets and imposing upon municipal authorities, without their consent the duty of keeping them in repair.

6. Even before the acceptance provided for in sec. 2650 of a street whose dedication has been tendered to the public, a city has the right to prevent obstructions and nuisances in the same.

———

SMITH, J.

The question to be determined in this case is whether the land which appeared for the first time upon a plat made by James Kemper in his will in 1856, and named on said plat as Southern avenue, is a public highway or the property of the plaintiff in this case.

It is impossible to understand the mooted questions of fact in the case without having before the eye a plat which will embrace the plat made by James Kemper in 1853, and the plat made in his will in 1856, of the property adjoining that covered by the plat of 1848. Such a plat will, therefore, accompany this opinion.

See plat on next page.

Briefly stated, the undisputed facts of the case are as follows: In 1848. James Kemper, being the owner of a large tract of land on Walnut Hills, made and recorded in Hamilton county, a plat of a portion of his property east of and adjoining Reading Road, a street twenty (20) feet in width and running along the southern part of the subdivision being dedicated under the name of Southern avenue.

The property thus dedicated was intersected by two streets, running northeast and south-west, each opening into Southern avenue one being a twenty feet alley, and the other a road sixty (60) feet wide, and marked No. 1, there being written in the space indicated for the road, these words: "This road is not dedicating to public use till lots are sold bounding thereon."

At the eastern end of Southern avenue were marks indicating a possible extension.

In 1856, James Kemper died leaving a 'will which was probated at Maysville, Ky., on March 12, 1856, and of which a duly authenticated copy was recorded in Hamilton county, March 13, 1856. Attached to the will as a part thereof was a plat. This will plat embraced the part of the property shown on the plat of 1848, including that indicated "Southern avenue", but showing it extended a distance of several hundred feet eastwardly and with a uniform width of twenty (20) feet. Underneath that portion of it which was a reproduction of the plat of 1848, were written these words: "This recorded and streets dedicated, but no farther east than street No. 1 is to be sold".

Under the will plat and to the right of the words above quoted were written the words, "This lease to John Sayre for ten (10) years.' The south boundary line of Southern avenue was the south line of James Kemper's property.

On the 21st day of February, 1853, and before the date of the execution of his will, James Kemper had given John Sayers a lease for ten years from February 1, 1853, of all that part of the property shown on the will plat as east of street No. 1, and including the part of Southern avenue, east of that street.

Southern avenue, as shown on the will plat, was intersected by streets No. 1, 2 and 3; and the property north of it and east of lot No. 1, was subdivided into ten lots, numbered consecutively from 44 to 53; those immediately bounding on the avenue being 48 and 53, and there being two tiers of four lots each between Southern and Northern avenues as shown on the plat. Lots 45, 46, 47 and 48 made up the western tier, and 50, 51, 52 and 53 the eastern.

The four lots of the eastern tier were of different areas, but those of the western tier had each two and 12-100 (2, 12-100) acres, this acreage including street No. 2, but excluding street No. 1, and excluding Northern avenue adjoining lot 45, on the North

SUB-DIVISION OF ¼ PART OF
JAMES KEMPER'S ESTATE,
IN SEC. 8, 8 MILL CREEK
TOWNSHIP, H. CO.

East .22.75 ch.

5.11.94½ ch.

49 3 17/100 a

H.A.Kemper 50.1 52/100 a

Sarah L Kemper 51 70/100 a

Sabina Kemper 52 1 80/100 a

Ellen E. Grundy 53 1 53/100 a

W 5-73 ch.

5.2.87½ch.

South

282-80

140    140    140    140    20

250

612.60'

44 2 99/100 a

Northern Avenue

300

45 2 12/100 a    46 2 12/100 a    47 2 12/100 a    48 2 12/100 a

Street No.2

Kemper

60    300    60

H.A. Kemper    Sarah L. Kemper    Sabina    Ellen S. Grundy

Southern Avenue

300

5.77 W. 19-70 ch.

This leased to John Sayer for 10 years.

140    140    140    140    140    140    60

Street No.1

N 12, 45 W

21 20 19 18 17 16 15 14 13 12 11 10 9 8 7 6 5 4 3 2 1

43 42 41 40 39 38 37 36 35 34 33 32 31 30 29 28 27 26 25 24 23 22

20    30-30'

H 12.45 W 9.93 ch. Road

Reading

This recorded and Streets
dedicated but no farther east
than Street No.1 is to be sold.

as well as Southern avenue adjoining lot 48 on the south. It also appears that the western tier of lots did not include any part of street No. 3, and that lot 53 of the eastern tier included all of street No. 3 at the west end of the lot as well as the south end of street No. 3 opposite the east end of Southern avenue; the eastern terminus of Southern avenue being the same as the east line of lot 48 extended. It further appears that lot 52 includes a section of street No. 3 as its western part.

By the will James Kemper gave lots 45 and 50 to a son, H. A. Kemper; lots 46 and 51 to his daughter, Sarah Kemper; lots 47 and 52 to his daughter Sabina Kemper; and lots 48 and 53 to his daughter Ellen S. Grundy.

The executors named were given power to sell any real estate not "herein before disposed of". Streets 2 and 3 being parts of the lots, were disposed of. Neither Ellen S. Grundy nor the executors nor the other heirs or devisees of James Kemper, ever undertook to dispose of Southern avenue but on the contrary Mrs. Grundy recognized it as an avenue.

In 1859, Mrs. Grundy conveyed the west part of lot 48 to Ferdinand Kolthoff and in her deed recognizes Southern avenue by making it one of the boundaries of the lot.

In 1863, Mrs. Grundy conveyed to the same grantee the east part of lot 48 again recognizing Southern avenue as a boundary. The distance from the Reading Road to the eastern terminus of Southern avenue was 1020 feet, measured on the south line of the avenue; and the distance to the east side of May street was 936 feet, thus making the terminus of Southern avenue 84 feet east of the east side of May street. The northern terminus of May street in 1863, was the south line of Southern avenue, its exact location being shown on the plat attached to the will of Peter H. Kemper, which was on record when the will of James Kemper was executed and nearly three years before the death of James Kemper.

In April, 1883, partition deeds were executed between the heirs of Ferdin-

and Kolthoff; and his widow and four heirs conveyed to his son Ferdinand Kolthoff lot 48 including the land occupied by Southern avenue; and in 1886 the latter conveyed the same to A. S. Winslow through whom the plaintiff holds by devise.

At the date of the execution of James Kemper's will the property in dispute was a part of the corporation known as "Special Road District of Walnut Hills, Mt. Auburn and Clintonville." It was annexed to the city of Cincinnati in 1870.

So much of Southern avenue as is dedicated on the plat of 1848 is conceded to have been dedicated with the formalities required by statute and therefore to be a public street. But the contention of the plaintiff is that the remaining or eastern portion of the avenue beyond street No. 1 is not a public highway for the following reasons:

First: That the publication of the plat of James Kemper in connection with his will was not a statutory dedication of the street.

Second: That nothing done by James Kemper can properly be construed as an intention or offer to dedicate the land for a street.

Third: That even if the acts of James Kemper can be so construed, and even if public use works an acceptance of an offer to dedicate, there has been no such public use with respect to this land as would constitute an acceptance.

Fourth: That even if the acts of James Kemper can be construed as an offer to dedicate there has been no acceptance of such offer by the municipal authorities as is required by the statute before dedication of the street becomes effective.

Fifth: That in Ohio there can be no acceptance of a proposed dedication of a street in a municipality except by an ordinance specially passed for that purpose.

It is not necessary to discuss the proposition that the acts of James Kemper with respect to Southern avenue did not make a dedication of the street according to the statutory requirement. This is conceded by

counsel for defendant because a statutory dedication requires the making of a plat, its signing and acknowledgment by the dedicator, and where the property is in a municipality, its acceptance by an ordinance, sec. 2597, sec. 2600, and sec. 2650, Rev. Stats.

Inasmuch as there was no statutory dedication of Southern avenue as a street it necessarily follows that if the statutory method of dedication is the exclusive method for the dedication of a street in Ohio, the plaintiff in error must prevail in this case. The first inquiry therefore must be as to this question.

That a dedication made according to the formalities of the statute is not the only method of dedication in Ohio, is a proposition settled beyond discussion in Ohio.

In Lessee of the village of Fulton v. Mehrenfeld, (8 O. S., 440) it was decided as declared by the syllabus that

"A dedication of ground for public uses may be made in Ohio either under the statute or according to the rules of the common law."

"The statutory dedication operates to transfer the estate by way of grant requiring no assent on the part of the public, and to be effective as a dedication the solemnities required by the statute, as to acknowledgment and recording must be complied with."

"To constitute a valid dedication of a street or highway at common law, there must not only be a dedication to public uses by the owner, but also an acceptance of such dedication by the public, and these may be shown by the acts and declarations of the parties and the surrounding circumstances."

Subsequent to this decision the act of 1852 was passed, which has been carried into our Revised Statutes as sec. 2650 and reads as follows:

"No street or alley which has been or may be dedicated to public use, by the proprietor of ground in any corporation shall be deemed a public street or alley or under the care or control of the council unless the dedication is accepted and confirmed by an ordinance specially passed for such purpose."

But in Wisby v. Bonte et al., (19 Ohio St., 238) a case which arose several years after the act of 1852 had been passed, the doctrine previously referred to as declared in Fulton v. Mehrenfeld was again approved, and the enactment of the act of 1852 declared not to have the effect of abolishing the common law method of dedication. The purpose and effect of the act of 1852 is explained by White, J. as follows:

"To understand the object intended by the adoption of this section, it is necessary to notice the statute in force at the time, prescribing the mode to be observed in laying out lots in cities and in dedicating grounds for streets and other public uses. The act then in force was that of March 3, 1831. (2 S. & C. Stat., 1482.)

"By the 6th section it was provided, that the recorded plat made and acknowledged by the proprietor in conformity with the act, should be a sufficient conveyance to vest the fee of the lands therein set forth and described for streets, alleys, ways, commons, or other public uses, in the city, or town corporate, to be held in trust for the uses and purposes so set forth.

"By this statute, proprietors laying out ground, within the limits of the corporation, into lots, were authorized to vest in the corporation, without its consent, the title to such streets and alleys as they chose to lay out, and thus charge the corporate authorities with the duty of keeping them open and in repair.

"The object of section 63 (now sec. 2650) was to prevent this charge from being imposed on the corporation, without its unequivocal consent, which the section, to avoid all uncertainty as to the fact, requires to be manifested by an ordinance specially passed for the purpose.

"The section was not intended as a limitation upon the general power of the corporation in regard to opening and improving streets, but as a restriction of the power possessed by others of imposing burdens and responsibilities on the corporation."

The next case in which the supreme court had occasion to consider the question as to whether the method of

dedication of streets provided by the statute is exclusive was that of the city of Steubenville v. King, (23 Ohio St., 613). In that case certain outlying territory was brought in by annexation, and the streets in such outlying district not having been dedicated with the formalities required by the statute for the dedication of streets in municipalities, the question arose as to whether these streets in fact were streets in law. In determining the question as to whether acceptance by the municipality as provided in sec. 2650 was necessary, the court had occasion to consider the proper construction of sec. 2650 as well as sec. 2640, which provides that "the council shall have the care, supervision and control of all public highways, streets, avenues, alleys, side-walks, public grounds and bridges within the corporation, nd shall cause the same to be kept open and in repair and free from nuisance."

At the time of the decision, sec. 2640, was known as sec. 439, and sec. 2650 as sec. 440 of the municipal code.

The court said: "It is quite obvious that the provisions of section 439 are broader than those of section 440, and that there are some descriptions of 'public grounds' or 'public highways,' which may become subject to the control and supervision of the council, without any ordinance specially accepting them as such. We suppose the object of section 440 was to prevent proprietors of lands within the city limits from establishing new streets or alleys by a mere paper dedication. This was in effect decided in Wisby v. Bonte, 19 Ohio St., 238.

"It can hardly be supposed that the legislature intended by section 440 to vacate, or withdraw from city control, all streets and thoroughfares of the city which had already been established without any 'ordinance specially accepting and affirming them as such.' This would be the effect of the construction contended for if allowed. We suppose the provision was not intended to have any application to cases where streets are established as such by public use, and by acts of the city authorities improving them as such."

In Segar v. Harrison, (25 Ohio St., 20) the supreme court again impliedly recognized the validity of a common law dedication as distinguished from a statutory dedication by the statement that:

"We agree with the counsel of the defendant that the record in this case neither shows a statutory dedication of Irwin street nor such an acceptance by the public of a common law dedication as would preclude the parties in interest by common law consent from reclaiming the property intended for such street."

And in Village of Lockland v. Smiley, (26 Ohio St., 99) the court again recognized the validity of a common law dedication, both in the syllabus and in the opinion. The syllabus is as follows:

"The dedication of the street as laid out on a town plat which is not executed in accordance with the statute may, as against the corporation within which the land is situate, be revoked at any time before its acceptance by the corporation or by the public. Notwithstanding lots laid out on the plat may have been sold."

And in the opinion it is said:

"The question in issue is whether the land in dispute has been dedicated to public use as a part of May street. As the plat was not executed in accordance with the statute, it is clear there has been no statutory dedication. The only question, therefore, for determination, is whether there has been such a dedication of the premises at common law as will be effectual between the parties."

The same principle was declared by the Hamilton county district court in the case of McNeale & Urban v. The City of Cincinnati, (8 W. L. B., 324.)

It is clear from the foregoing authorities that our supreme court has decided that the provisions of sec. 2650 are not intended to furnish an exclusive mode of acceptance of an offer to dedicate ground for street purposes; but were enacted for the purpose of preventing owners of ground

who desired to dedicate it for street purposes, from imposing upon the municipality the duty of keeping such street or streets open and in repair, and thus of preventing them from being subjected to liability without their consent; and that, notwithstanding the provisions of sec. 2650 there may be an offer of dedication and an acceptance by public use under the principles of common law so as to constitute the ground offered and thus accepted a public highway; although no liability attaches to the municipality to keep such highway in repair.

It is contended, however, by counsel for plaintiff in error, that the platting commission act of 1871, found in sec. 2626 to sec. 2639, Rev. Stats. gives to the platting commission the sole power to declare whether land dedicated for street purposes shall be accepted as a street; and that as the platting commission never accepted the street in controversy, the same is not, in law, a street.

Without going into detail as to the provisions of the platting commission act, it may be stated generally that it provides for a commission whose duty it shall be "to plat such portions of the territory within its limits in which the necessary or convenient streets or alleys have not already been accepted by the corporation so as to become public streets", (sec. 2626) and then declares that "no streets or alleys, except those laid down on such plan shall subsequently be in any way accepted as public streets or alleys by the municipal corporation, nor shall any of the public funds be expended in the improvement or repair of streets or alleys subsequently laid out, and not on such plat."

We can not think that the "acceptance" referred to in the platting commission statute is anything other than a statutory acceptance by the municipal corporation which imposes upon it a liability to repair, and that in this respect the purpose of the act is no different from the purpose intended to be subserved by sec. 2650. There is in the platting commission act no power to vacate streets, nor to reject proposed dedications. Its power is exclusively that of acceptance, and the right to amend its plans implies the power to accept or adopt later what it has failed to accept or adopt before. (Sec. 2636.)

It is remarkable, too, if the contention of plaintiff in error is correct, that not one of the Ohio cases cited heretofore and decided since 1871, in which it was decided that there might be a common law dedication of a street should have referred to the platting commission act. The cases of city of Steubenville v. King, (23 O.S.) Segal v. Harrison, (25 Ohio St.) and Lockland v. Smiley, (26 Ohio St.) have all been decided since 1871. Yet it seems never to have occurred to either counsel or the court deciding those cases that the platting commission act had abrogated the right to dedicate according to common law.

It being settled in this state that there may be an offer and acceptance of ground for a street which constitutes a dedication according to the rules of common law, the next inquiry is, has there been such a dedication.

First: Has there been such an offer.

"No particular word or ceremony or form of conveyance is necessary to render the act of dedicating the land to public uses effectual. Anything which fully demonstrates the intention of the donor or the acceptance by the public works that effect." Le Clerq et al. v. Trustees of Gallipolis, (7 Ohio, part 1, 220); nor is any deed or writing necessary to constitute a dedication. (6 Hill (N. Y.,) 407, 411, 412); Buntin v. City of Danville, (93 Va. 200, 204); Bevan v. Manning, (6 Ohio, 298-303); Dillon on Municipal Corporations, (4 Ed.) sec. 631, note 4; Tiedeman on Municipal Corporations, sec. 217, (p. 410.)

It is not practicable to review in detail all of the evidence bearing upon the question as to whether James Kemper intended to offer Southern avenue as a street for acceptance by the public, but the following considerations are controlling to our minds in reaching the conclusion that he did.

First: The will itself manifests an intention to dedicate Southern avenue

to the public. (a). Because unless such was the intention the land occupied by the proposed street was undisposed of by the will. If it was intended as a private way it would naturally be vested in private owners or some indication given that its use was not for the public generally but for some portion only of the public. (b). Because the presumption of law is now well established that where a person surveys and plats his land with blocks, lots, streets and alleys, all the lines upon such plat represent the intent of the owner, and the meaning expressed by such lines should be deemed as effectual as that of the words or language found therein. Where the owner of land draws and executes a plat thereof and designates a strip therein, by lines, as a street and makes conveyances according to such plat, such strip is irrevocably dedicated to the public use as a street. "Great Northern Ry. Co. v. City of St. Paul., 61 Minn., 137-8. Many other authorities could be cited to the same effect. As the will devised lots with reference to the will plat it is quite evident that the intention of James Kemper was that Southern avenue was dedicated by him to be a street.

Second: Even if it be true as contended that Southern avenue was a mere cul de sac having no outlet at the east end, this circumstance would not prevent its becoming a street. There are many public streets of this nature. But the evidence does not show that James Kemper necessarily contemplated the street being a cul de sac. The avenue at the east intersected street No. 3, and crossed May street, of the Peter H. Kemper property.

Third: There could be no revocation of this offer, if at all, except by all of the heirs of James Kemper and such revocation was never attempted.

The next inquiry is was there a common law acceptance of Southern avenue by the public.

There is no established standard by which the use necessary to determine an acceptance by the public may be measured and declared to be sufficient, but the authorities are in agreement to the effect that a use which would naturally follow from the character of the place and the settlement of the community is sufficient Tarraldson v. Town of Lime Springs, 92 Ia., 187; Gutherie v. Town of New Haven, 31 Conn., 308, 321; Abbott v. Cottage City, 143 Mass., 521, 525.

It appears from the evidence that at the time of the death of James Kemper the land covered by that part of Southern avenue in dispute was a part of the land leased by James Kemper to one, John Sayers, the lease expiring in 1863. The evidence also shows that the use of Southern avenue was at first by school children and gradually grew into a use by the public generally. It is true there is a conflict of testimony upon the question of use, but we think the weight of the testimony is to the effect stated.

It is also urged with great force by counsel for the city that as the plaintiff traces her claim of title back to James Kemper, through whom the defendant claims, and as the deeds in her chain of title refer to the will plat and contain recitals recognizing "Southern avenue", she is estopped to question the dedication to the public made in the will (which is the common source of title).

But we have not found it necessary to express an opinion upon that question, nor upon the question whether in case such an estoppel existed it could be asserted by the city.

It is claimed by the plaintiff in error, however, that conceding there was a dedication which became effective under the rules of the common law, yet the right in the public to assert such right has been lost by reason of the adverse possession of the plaintiff in error, and her predecessors in title for a period of over 21 years.

We cannot undertake to go into an exhaustive review of all the testimony bearing upon this subject. If the case turned upon this question, before we would be justified in reversing it, we would be obliged to find that the finding of facts necessarily involved was manifestly against the evidence.

The evidence shows that the land occupied by the street, as has been

previously stated, was covered by the Sayer lease which did not expire until 1863. Consequently the statute could not begin to run in favor of the predecessors in title of plaintiff in error before 1863; and the evidence clearly shows a general public use before 1884. The claim of plaintiff seems to be based largely upon the fact that at a point where the eastern line of street No. 1 intersects Southern avenue the plaintiff's predecessors in title maintained a gate for many years which completely shut off passage along the street. But this gate seems to have been erected and maintained largely for the purpose of protecting the nursery which was owned by plaintiff's predecessors in title, and the fact is undisputed that the public passed through this gate whenever and in whatever manner it saw fit.

Moreover, the doctrine that adverse possession of a public highway can be established by fencing in a public highway has been greatly modified by the late Ohio decisions. The tendency of the supreme court decisions now seems to be to place the right of a private person to claim land belonging originally to the public for street purposes rather upon the ground of equitable estoppel than that of the statue of limitations, and to refuse to recognize any claim of right by adverse possession unless accompanied with the erection of valuable improvements upon the land. Elster v. Springfield, 49 Ohio St., 98.

The subject has been quite thoroughly examined so far as the decisions in this state are concerned in the case of Heddleston, Supervisor, v. Hendricks, 52 Ohio St., 460, in which the conclusion is announced that "The right of an adjacent landowner to enclose by a fence however constructed, a portion of a public highway, cannot be acquired by adverse possession, however long continued."

It is urged by plaintiff in error however, that by force of sec. 4977 the decisions of our supreme court with reference to adverse possession not being established by fencing in a street are now no longer declaratory of the law

of the state. Sec. 4977 is as follows:

"An action for the recovery of the title or possession of real property, can only be brought within twenty-one years after the cause of such action accrues; and whenever any of the streets or alleys or any part or parts thereof lain (laid) out and shown on the recorded plat or plats of any cities or villages in the state of Ohio, shall not have been opened to the public use and occupancy of the citizens of said cities or villages, or other person or persons, and said streets or parts thereof not opened to public use as aforesaid shall have been enclosed by a fence by the owner or owners of the inlot or lots (or) outlots lying on, adjacent to, or along such streets or alleys or parts thereof not opened as aforesaid, and remained in the open uninterrupted use adverse possession and occupancy of such owner or owners of such lot or lots lying on, adjacent to, or along such streets or alleys for the period of twenty-one years, and which said streets, alleys, inlots or outlots, shall be part and parcel of the tract of land lain (laid) out into such streets, alleys and lots, by the original proprietor or proprietors, laying out said streets, alleys and lots, the public easement therein shall be and the same hereby is extinguished, and the right of said cities or villages, the citizens thereof or other person or persons, and the council of said cities or villages and legal authorities thereof to the use, control or occupancy of so much of said streets and alleys as has been fenced up, used, possessed and occupied as aforesaid is barred to said cities, villages and the citizens thereof and other person or persons except to said owners of said inlots or outlots lying on, adjacent to, or along said street or streets, alley or alleys, who have occupied said streets or alleys or parts thereof in manner aforesaid."

It is contended by the city that this statute has no application to the present case for various reasons:

First. That it was first enacted in 1889; that it is presumed to operate prospectively only; and that if it should be construed to operate retro-

spectively, such construction would render it unconstitutional.

Second. That the streets referred to are only such as are "shown on the recorded plat or plats of any cities or villages in the state of Ohio," that have been made by "the original proprietor or proprietors"; and that this of necessity means such plats as are contemplated by sections 2597 to 2607 of the Revised Statutes, which are required to be executed, acknowledged and recorded as therein specified, and that it can have no reference to a common law dedication.

Third. That the land in contention has not "remained in the open, uninterrupted use, adverse possession and occupancy" of the plaintiff and her predecessors in title "for the period of twenty-one years."

We do not find it necessary to express an opinion as to the soundness of the first two objections, for the reason that we regard as sound the last objections for reasons heretofore given by us.

The prayer of the petition is that the defendant be "forever enjoined" from going upon the avenue. As the avenue is found by us to be a dedicated highway, neither the defendant or any one else can be enjoined by the plaintiff from using the same. It necessarily follows therefore that the petition must be dismissed.

The dismissal of the petition, however, does not dispose of the case. There still remains the question whether the defendant, the city not yet having accepted the avenue, may be afforded affirmative relief.

We have seen that by sec. 2640 "the council shall have the care, supervision and control of all public highways, streets, avenues, alleys, side-walks, public grounds and bridges within the corporation and shall cause the same to be kept open and in repair and free from nuisance."

Under this section it is the duty of the city of Cincinnati to keep Southern avenue free from nuisances such as the attempted occupation of this street by plaintiff; and if a resolution of council is necessary to authorize the corporation counsel to maintain an

action seeking such relief, it would seem that in this case, in view of the fact that the issue is not made in the pleadings, that he was not so authorized, and in view of the fact that the acts of a public official are presumed to be legal until the contrary appears, and in view of the provisions of the statute making it the duty of the corporation counsel to protect the rights of the city, that he will be held in this case to have been properly authorized to ask for the relief which is here prayed for.

But it is contended that even if the city has properly authorized the suit, no such relief can be afforded it because there has been no acceptance yet by the city of this street as required under sec. 2650.

But as was said in city of Steubenville v. King, 23 Ohio St., 63, )
"It is quite obvious that the provisions of sec. 439 (sec. 2640, Rev. Stats.) are broader than those of sec. 440. Sec. 2650 and that there are some descriptions of 'public grounds' or 'public highways' which may become subject to the control and supervision of the council without any ordinance specially accepting them as such."

Furthermore there are authorities directly in point in other states where it is held, as in this state, that there may be a common law dedication of a street, and where the statute providing for acceptance by a municipality, is construed as in this state to give the municipality the right to accept when it chooses at which time only does a liability arise for failure to keep the street in repair.

These authorities hold that the streets are held in trust by the city, and that it represents in its trust capacity all of the public which has acquired in the right to use the street.

The following cases illustrate the class of authorities referred to:

In Mayor, etc. of Borough of Brigantine v. Hall and Trust Co. (35 Atlantic Rep. N. J., 1896), 344 the question arose as to the right of the city to prevent the defendant from stringing wires in a street which had been dedicated but of which dedication there had been no formal acceptance

by the city. In that case the court held that the municipality had power to bring the suit to assert and protect the public's right in the dedication. The following citation is in point.

"Whether there was or was not actual acceptance remained a matter of dispute * * * But the affidavits do show * * * that there has been a proffer of dedication, such as would cut-off the donor from the power of retraction; so that whenever in the estimation of the local authorities, the wants and convenience of the public require the street proffered for the public use, the dedication could be consummated. The actual acceptance by a formal adoption is held to be necessary to impose on the public the duty of repairing and maintaining, but is not necessary to consummate the dedication so as to cut off the rights of the owner of the land. I think that the act of dedication is so far complete that if this were the only obstacle, the municipality would have power to bring a suit to assert and protect the public right in the dedication profferred although it may not have heretofore obligated itself to maintain or repair the street."

In City of Llano v. County of Llano, 5 Texas, Civil Appeals Reports, 132, the power residing in a city to assert the rights of the general public in the streets was declared in the following language:

"The highways and public grounds within the limits of the city are held in trust by it, in its municipal capacity, for the benefit of the public, to the end that they may be enjoyed and used by the public in the manner authorized by law. When this trust is interfered with or right invaded, so as to affect the general public in their enjoyment and use of this easement, it is not only proper but right that the city should take the proper steps to restore the property to that condition that will permit its full and unrestricted use and enjoyment by the public. Although the obstruction or invasion complained of may at common law or by reason of some act prohibited by ordinance create and constitute a nuisance per se, and though the city may have the power to abate without judicial ascertainment, the right also exists, as a cumulative remedy in the city, by a suit seeking to abate the nuisance and to cause the removal of the obstruction."

And in the case of Cincinnati Street Railroad Co. v. Smith, 29 Ohio St., our supreme court in considering the nature of the interest which a municipality in view of 2640 and other sections, has in the streets located therein, declared that "the city holds the fee of the streets in trust for the uses intended, and the care, supervision and control of them is expressly imposed upon the council", and that "the state in its sovereign character has reserved no property interest in the streets in question."

A very careful examination and consideration of the record and briefs in this case has not convinced us that an error was committed in the trial or decree of the lower court, and its judgment will therefore be affirmed.

Jackson and Dempsey, JJ. concur.

Edward Colston, and James F. Winslow, for Plaintiff in Error.

Edward Barton, for Defendant in Error.