J. R. WATKINS MEDICAL COMPANY v. J. H. SANDS and Others.[1]

May 31, 1901.

Nos. 12,564—(96).

**Trade-Mark.**

A name, device, or symbol cannot be adopted as a trade-mark unless it expresses and identifies either the origin or ownership of the article to which it refers.

**Same.**

Words merely descriptive of the character, quality, or composition of an article cannot be monopolized as a trade-mark.

**Same—Exclusive Right.**

The exclusive right to a name, title, or device as a trade-mark is founded upon priority of appropriation.

[1] Reported in 86 N. W. 340.

Vegetable Anodyne Liniment.

The words "Vegetable Anodyne Liniment" cannot be utilized as a trade-mark, as they are merely descriptive of the character or ingredients of the article.

Medicament.

A medical preparation may be used and manufactured by any one who lawfully and in good faith acquires knowledge of its composition, and such person may publish the fact that the product is manufactured in accordance with the original formula, and the fact that such preparation has become popularly known by the name of a certain person gives no exclusive right to any one to appropriate the name as a trade-mark. Watkins v. Landon, 52 Minn. 389, followed.

Evidence.

Evidence examined, and *held* to support the finding of the court that defendant J. H. Sands, Sr., came lawfully and in good faith into possession of a certain medical formula, together with labels adapted to its advertisement and sale, and that the defendant J. H. Sands, Jr., lawfully and in good faith acquired knowledge of such formula and labels.

Findings Sustained by Evidence.

*Held*, further, that the evidence supports the findings of the court to the effect that defendant J. H. Sands, Sr., lawfully used the words "Dr. Ward's" in connection with the manufacture, advertisement, and sale of such formula prior to the time the same were used by plaintiff's grantor, J. R. Watkins, and that at the commencement of this action J. H. Sands, Jr., was lawfully entitled to use such name in connection with the manufacture, advertisement, and sale of the formula.

Action in the district court for Winona county to recover $2,000 damages for infringement of plaintiff's copyright and trade-mark, and to restrain defendants from manufacturing or selling any imitation of a proprietary medicine prepared by plaintiff known as "Dr. Ward's Liniment" and "Dr. Ward's Vegetable Anodyne Liniment," and from unlawful competition with plaintiff by means of false devices and representations. The case was tried before Snow, J., who found in favor of defendants. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Tawney, Smith & Tawney,* for appellant.

*Webber & Lees,* for respondents.

LEWIS, J.

This action was brought for the purpose of enjoining defendants from manufacturing and selling any imitation of plaintiff's proprietary medicine or any article bearing the name "Dr. Ward's Liniment," or "Dr. Ward's Vegetable Anodyne Liniment," or any imitation of such names, upon the ground that the same was an infringement of plaintiff's trade-mark; and, further, to enjoin defendants from wrongfully and unfairly competing with plaintiff by the preparation, sale, and advertisement of compounds made in imitation of plaintiff's preparations.

The case was tried by the court without a jury, and, so far as material, the following facts found: That in 1856, and for some time prior thereto, one Richard Ward, of Ohio, was the owner of a formula for the making of a certain liniment, then known as "Ward's Botanical Liniment," which he manufactured and sold in that region to a greater or less extent; that in the year 1856 Ward disclosed the compounding of this formula to J. H. Sands, Sr., a resident of that vicinity, and furnished him with yellow-colored labels and wrappers descriptive of the liniment, for his use in the manufacture and sale thereof; that Sands was about to remove to Minnesota, and it was agreed between Ward and himself that he might manufacture and sell the liniment in Minnesota on his own account, and use such labels and wrappers, which described the preparation as "Ward's Botanical Liniment," and "R. Ward's Botanical Liniment." Upon coming to Minnesota, Sands settled in Winona county, and began to make and sell, in bottles, the liniment according to the formula, both to druggists, and at retail, by his own efforts, to neighboring settlers. During the first few years Sands used the labels and wrappers furnished him by Ward, either pasting them on the bottles or wrapping them up together, but when this supply was exhausted he produced a new combined wrapper and label, reading, "Dr. Ward's Celebrated Liniment," which he used in advertising the remedy, and was the first person to adopt and use the prefix "Dr." In Winona county and contiguous localities, during this time, the medicine had become known as "Ward's Liniment," and "Dr. Ward's Celebrated Liniment," and had acquired some reputation as an efficient rem-

edy for numerous ailments, and it was well known to be made and sold by Sands, Sr.

In 1867 the same Richard Ward disclosed to J. R. Watkins, president of the plaintiff company, a formula for compounding a liniment which he called "Ward's Celebrated Liniment," and furnished him with bottles for it with the words "Ward's Liniment" blown in the glass. From 1867 to 1870 Watkins manufactured and sold, in different parts of Minnesota, the liniment, using the "Ward's Celebrated Liniment" labels. From 1870 to 1894 Watkins abandoned that label, and began to use one reading, "Dr. Ward's Vegetable Anodyne Liniment." In 1894 the plaintiff company acquired all J. R. Watkins' interests in the liniment, since which time plaintiff has continued in the manufacture and sale thereof under the designation of "Dr. Ward's Liniment," and "Dr. Ward's Vegetable Anodyne Liniment."

In 1894 the senior Sands died, and in 1897 J. H. Sands, Jr., began to manufacture and sell a liniment made after the formula learned in his youth from his father by assisting him in its preparation. Sands, Jr., began using the "Dr. Ward's Vegetable Liniment" label, but later changed it to "Dr. Ward's Vegetable Oil Liniment," which name was the only one retained and used by him and the other defendants when this action was begun.

As conclusions of law the court found that plaintiff had no legal right to claim as a trade-mark any of the words used by defendants, and that the defendants, by the use of their bottles, labels, wrappers, etc., were neither guilty of unfair competition with plaintiff nor of an infringement upon any of its legal rights. From an order denying a motion for a new trial, plaintiff appeals.

This cause is based upon an infringement of a trade-mark. The right of J. H. Sands, Sr., to manufacture and sell the liniment is not disputed; hence, if Sands, Sr., was lawfully using the titles or names in question at the time Watkins began to use them, plaintiff could acquire no rights, as against defendants, by such subsequent adoption and use, provided they had lawfully acquired the right from Sands, Sr., to sell the liniment and use the names referred to. It is well settled that a name, device, or symbol cannot

be adopted as a trade-mark, unless it expresses and identifies either the origin or ownership of the article to which it refers; and it is also well settled that the exclusive right to a name, title, or device is founded upon priority of appropriation, and that words merely descriptive of the character, quality, or composition of an article cannot be monopolized as a trade-mark. Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 Sup. Ct. 270; Goodyear's India Rubber Glove Mnfg. Co. v. Goodyear Rubber Co., 128 U. S. 598, 9 Sup. Ct. 166; Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625; Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151. Under these rules the words "Vegetable Anodyne Liniment" cannot be made a trade-mark, as they are merely descriptive of the character or ingredients of the article, and in no manner refer to its origin or ownership, nor do they indicate priority of appropriation.

The only words among those claimed to have been used by plaintiff and its predecessor (J. R. Watkins), applicable to trade-mark use are the words "Dr. Ward's," or "Dr. Ward's Liniment," because they in themselves express the idea of origin and ownership; but, under the findings of the court, Sands, Sr., used the words "Ward's Botanical Liniment," and "Dr. Ward's Celebrated Liniment," and "Dr. Ward's Liniment" prior to the time that Watkins used or became entitled to use them. We have examined the record, and find that the court's findings are supported by the evidence; that Sands, Sr., came lawfully and in good faith into possession of the formula and labels at that time connected with its sale; and that defendants in this action lawfully and in good faith acquired the knowledge of this formula, and the use of the labels; and upon such a state of facts the case is controlled by Watkins v. Landon, 52 Minn. 389, 54 N. W. 193.

In that case it was held that a medical preparation could be used and manufactured by any one who lawfully and in good faith acquired knowledge of its composition, and that such person so lawfully coming into possession of such preparation might publish the fact that the product was manufactured in accordance with the original formula; and, further, the fact that a preparation has become popularly known by the name of a certain person gives

no exclusive right to any one to appropriate that name as a trademark. Applying these principles to this case, the defendant J. H. Sands, under the evidence, was rightfully using his knowledge of the formula, and was entitled to manufacture and sell it by means of the names and titles stated. As to the defendants S. G. Sands and Smith McHugh, the record shows they were in no manner engaged in the business at the commencement of this action.

This disposes of the only material question in the case, and it is not necessary to enter into a discussion of the various rulings of the court in reference to the exhibits and evidence offered by plaintiff with respect to such rights as it may subsequently have acquired by registering its trade-mark under acts of congress or state laws; for, if any error was committed by the court, it was without prejudice.

Order affirmed.