HERSCH, APPELLANT, *v.* THE E. W. SCRIPPS CO. ET AL., APPELLEES.

*Mr. A. P. Leary* and *Mr. J. Gordon Forester,* for appellant.

*Messrs. Baker & Hostetler* and *Mr. Evan Jay Cutting,* for appellees.

JACKSON, C.J. This is a libel case in which the defendants (appellees herein) are the Cleveland Press (a local newspaper), the E. W. Scripps Company (owner of the Cleveland Press at the time

the allegedly libelous article was published), Robert Bergen (a reporter for the Cleveland Press), and Anthony Tucci (an editor of the Cleveland Press). The plaintiff-appellant is Marvin Hersch, an attorney. He appeals from a decision of the Court of Common Pleas of Cuyahoga County which granted a motion for summary judgment to the defendants-appellees. For the reasons set forth below, this court has determined that the judgment of the trial court must be affirmed.

## I

The facts pertinent to disposition of this appeal are summarized below.

Sometime prior to February 7, 1977, appellant, Marvin Hersch, agreed to represent Peter D. Earle who had been indicted and was then awaiting trial for breaking and entering in violation of R.C. 2911.13. The indictment alleged that Mr. Earle had attempted to break into the home of Mrs. Betty Basso, whom he had dated prior to her marriage. The jury found Earle guilty of criminal trespass, and the trial court (the Honorable Francis E. Sweeney), imposed the maximum sentence.

During the trial of Mr. Earle, attorney Hersch called Mrs. Basso to the witness stand and asked her if she had seen Mr. Earle after he was arrested. She replied that Mr. Earle and Mr. Hersch had visited her house in the evening on the Sunday prior to the trial. Attorney Hersch asked her, "Did we discuss this case?" Mrs. Basso responded, "Yes, we did." On cross-examination, Mrs. Basso stated that Mr. Hersch had threatened to ruin her marriage if she took the stand, and that at the meeting with Hersch and Earle on the Sunday before the trial, she and her husband were offered a five hundred dollar check to drop the charges against Earle. Documents were typed up during the meeting, in which Mr. and Mrs. Basso promised that they would drop the charges, and Mr. Earle promised not to

bring suit against the Bassos because of his arrest. However, Mr. and Mrs. Basso refused to accept the check or to sign the papers.

On redirect examination, Mr. Hersch asked Mrs. Basso who arranged the meeting at her home:

"Q. Who arranged the meeting then?

"A. Who arranged the meeting?

"Q. Yes.

"A. Originally you called me up about a week and a half before this was to go to trial and said something about a settlement before court.

"Q. Is that what I said?

"A. Yes. You made the first phone call to me.

"Q. Yes. It's your testimony that I called you about a week and a half before the trial, is that correct?

"A. Yes, approximately.

"Q. And did I offer you money at that time?

"[THE PROSECUTOR]: Objection.

"THE COURT: She may answer.

"A. Settlement, whatever that means.

"Q. Did I say settlement?

"A. I believe that's the word you used." (Earle transcript.)

Mrs. Basso also testified on redirect examination that Mr. Hersch typed the "settlement" documents on her typewriter. Hersch asked Mrs. Basso to relate any conversation she had with him about money:

"Q. Did you have any conversations with me about money?

"A. I believe we did.

"Q. In what respect? Would you relate those conversations?

"A. The conversations generally agreed to settling out of court, money, possibility of what you were going to do to me, what you were going to do to my marriage.

"Q. I'm asking you to relate the conversation that you had with me possibly

about money. What specific conversation did you have with me about money?

"A. You asked how much money we were going to settle for if and when that took place.

"Q. Did I ask you that?

"A. Yes, you did.

"Q. When I came to your house on Sunday, did I mention any specific amount of money?

"A. Yes, you asked Mr. Earle how much money the settlement was going to be for. He said $500. You typed that amount on the check.

"Q. And that was a check, wasn't it?

"A. Yes, it was.

"Q. Did you have any objections to receiving the check?

"[THE PROSECUTOR]: Objection.

"THE COURT: Oh, she may answer whether or not she accepted it.

"A. No, I did not accept the check. I didn't sign anything. I didn't agree to anything. I didn't feel it was right.

"Q. Did you make mention of the fact that you would accept cash instead of the check?

"[THE PROSECUTOR]: Objection.

"THE COURT: She may answer that.

"A. Yes, I did.

"Q. Is it your testimony that you would have accepted cash instead of that check? Is that correct?

"A. Yes, that's correct." (Earle transcript.)

Mr. Earle testified that he and Mrs. Basso negotiated the $500 settlement amount, and that they arranged the Sunday meeting at the home of the Bassos. He gave the following description of the meeting:

"Q. [HERSCH] What took place at the meeting Sunday?

"A. [EARLE] Okay. We were all sitting at the kitchen table, the four of us, and we were talking about having Betty and David drop the charges and the fact that he wanted $500 for it.

"And she, Betty, says, 'Okay, that's all right. If my husband drops them'—

"[THE PROSECUTOR]: Objection.

"THE COURT: Overruled. Continue.

"A. Betty says, 'That's all right if my husband drops them. He can drop the charges, but I'm not signing anything. I'm not having anything to do with it.'

"Q. Do you recall a conversation that took place with regard to their accepting a check?

"A. Yes.

"Q. What was that conversation?

"A. The conversation here[1] or the conversation that night?

"Q. The conversation that night, Sunday night at their house.

"A. Yes, you were typing the check out on — first of all, you asked me, you said, 'What did you and David agree to?'

"And I said, '$500,' and you were making the check out and you handed him — as soon as you pulled it out of the typewriter, you were going to hand it to him. He said, 'No, you guys said cash.' And then Betty spoke up and said —

"[THE PROSECUTOR]: Objection.

"THE COURT: He may answer.

"A. Betty spoke up and says, 'We aren't accepting the check because it could turn into NSF, non-sufficient funds. That's just a piece of paper to me. You said cash and we want cash or it's no deal.' " (Earle transcript.)

In sentencing Earle, the trial court condemned his attempt to bribe the Bassos; attorney Hersch then stated that:

*"I think the Court is aware of the fact that Mr. Earle did go to the house over there, but he consulted with me first and I*

---

[1] Mr. and Mrs. Basso testified that just before the beginning of Mr. Earle's trial, Earle and Hersch repeated their offer to pay $500 if the Bassos would agree not to testify. Earle's reference to "the conversation here," quoted in the text above, appears to corroborate the Bassos' testimony.

*wish to inform the Court that I was as much involved in this incident as he was, certainly not in any attempt whatever to intimidate these people, but simply to talk about it with them."* (Emphasis added.)

The court replied:

"THE COURT: Mr. Hersch, I hope you don't go any further. I don't see it that way, so I think the less said the better and I feel that nothing else should be said about this."

Mr. Hersch was subsequently indicted for bribery and obstructing justice, violations of R.C. 2921.02[2] and 2921.32.[3] That case was tried before the Honorable Sam A. Zingale.

Mr. and Mrs. Basso testified for the state in the trial of Mr. Hersch. On direct examination, Mrs. Basso described the initial contact she had had with Hersch and Earle about a "settlement":

"Q. [MR. DOHENY, the prosecutor] There were charges before the Cuyahoga County Grand Jury?

"A. Yes.

"Q. In relation to that, what happened after the indictment?

"A. The next thing that happened, I received a call from Mr. Hersch. He said he was —

"Q. You referred to Mr. Hersch. Do you see him?

"A. Yes.

"MR. GOLD [defense counsel]: Stipulate identification.

"THE COURT: The record shall so reflect.

"Q. Did you know Mr. Hersch before that first conversation?

"A. No.

"Q. Do you know when the first conversation was?

"A. It was a week and a half before the trial, Thursday evening, 8:00 o'clock.

"I answered the phone.

"Q. Do you remember the date?

"A. January, 1977.

"Q. A week and a half before whose trial?

"A. Before Earle was tried about the breaking and entering.

"Q. Describe what Mr. Hersch said.

"A. Mr. Hersch said, 'Is this Betty Basso?'

"I said, 'Yes.'

"He said, 'Do you know Daniel Earle?'

"I said, 'Who is this?'

"He said, 'This is Mr. Hersch, his attorney.'

"I said, 'Where did you get my phone number?'

"It was an unlisted number.

"Q. How long was it unlisted?

"A. A couple of years.

"Q. What else did he say?

"A. He thought Mr. Earle was a nice man. He wanted to make a settlement which would discredit me, if it would make my husband not too happy. He said if I would settle —

"MR. GOLD: Objection to the repetition.

"THE COURT: Sustained.

"THE WITNESS: He said Mr. Earle was working in Akron, Ohio. He said if we went to Court it would be messy. That was the end of the conversation.

"* * *

---

[2] R.C. 2921.02(C), bribery, provides:

"No person, with purpose to corrupt a witness or to influence him with respect to his testimony in an official proceeding, either before or after he is subpoenaed or sworn, shall promise, offer, or give any valuable thing or valuable benefit."

[3] R.C. 2921.32, obstructing justice, provides, in part:

"(A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime, or to assist another to benefit from the commission of a crime, shall do any of the following:

"* * *

"(4) Destroy or conceal physical evidence of the crime, or induce any person to withhold testimony or information or to elude legal process summoning him to testify or supply evidence[.]"

"Q. Did you talk to Danny Earle before the trial?

"A. Yes.

"Q. What was the subject of your conversation?

"A. I said his lawyer said there could be a settlement. Mr. Earle wanted to talk to my husband.

"I said, 'My husband is not at home; he works eight hours a day.' " (Hersch transcript [criminal trial].)

Mr. and Mrs. Basso testified that they negotiated a dollar amount with Earle. Mr. Basso testified that attorney Hersch instructed him not to appear in court the day of the trial of Mr. Earle and to ignore the subpoena. The Bassos also testified that they had spoken to the judge and the prosecutor prior to the Sunday meeting with attorney Hersch and Earle, and were advised not to enter into a "settlement" and to obey the subpoena. Mr. Basso said that he was curious "to see what these people were like," so he allowed the meeting to occur even though he had no intention of accepting the money. That this was his purpose was corroborated by Mrs. Basso. Earle testified, however, that the only reason a "settlement" was not reached was because Mrs. Basso refused to accept a check.

At the close of the state's case, the trial court inexplicably entered a judgment of acquittal in favor of attorney Hersch.[4] In reporting the decision by Judge Zingale, the Cleveland Press printed the following article:

"BRIBE TRIAL JUDGE ACQUITS LAWYER

"Common Pleas Judge Sam A. Zingale has found a lawyer innocent of bribery after a two-day trial without a jury.

"Attorney Marvin H. Hersch was acquitted after allegedly typing up documents and a $500 check drawn on his account in efforts to get a complaining witness to drop criminal charges against his client.

"Hersch's client, Peter D. Earle, was charged with criminal trespassing but the victim refused the $500.

"The money was offered at the victim's home the night before Earle's trial was to begin.

"Judge Zingale said yesterday that Hersch's intent was not to subvert justice, but commented that he acted 'stupidly.'

"The $500 transaction was originally disclosed during a related trial several months ago before Common Pleas Judge Francis E. Sweeney, who said he was appalled at Hersch's conduct.

"Asked for his reaction to Judge Zingale's decision to throw out the charge against Hersch, Sweeney said:

"I won't comment on the record about the conduct of a colleague. Off the record, I've got plenty to say about his (Zingale's) decision."

On July 5, 1978, appellant commenced this libel action in the Court of Common Pleas of Cuyahoga County against the appellees.[5] Appellant's complaint contained the following allegations:

---

[4] Under Ohio law a trial court is obligated to deny a motion for judgment of acquittal, where the evidence, "* * * viewed in the light most favorable to the government, is such that 'a reasonable mind *might* fairly find guilt beyond a reasonable doubt' * * *." (Emphasis sic.) *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 263 [9 O.O.3d 401]. In the trial of Hersch for bribery and obstructing justice, it appears that the state adduced substantial evidence of guilt on every element of the crimes charged.

[5] Also on this date appellant filed a separate complaint in common pleas court against the Cleveland Plain Dealer and others, in which appellant alleged that he was libeled by the Plain Dealer's report of his acquittal. (*Hersch* v. *Plain Dealer Publishing Co. et al.* No. 78-986202, unreported.) The action against the Plain Dealer was subsequently consolidated for trial with the case at bar on motion by the appellees. During oral arguments on appeal before this court, counsel for both

"6. On July 7, 1977, defendant, the E. W. Scripps Company, published in the defendant newspaper, matter concerning plaintiff written by defendant Bus Bergen, and edited by defendant Tony Tucci.

"7. Said matter included the following text in bold print:

" [']Judge Zingale said yesterday, that Hersch's intent was not to subvert justice, but commented that he acted "stupidly." [']

"8. The matter so published concerning plaintiff is defamatory.

"9. The matter so published concerning plaintiff is false.

"10. At the time of such publication, defendants knew or could with the exercise of reasonable care have ascertained that the matter was untrue.

"11. By reason of such publication, plaintiff was injured in his reputation and suffered pain and mental anguish to his damage in the sum of $500,000.00."

Appellees filed a joint answer on August 11, 1978, in which they admitted that the allegedly defamatory article was published in the Cleveland Press, and that the article was written by appellee Bergen. Appellees denied that appellee Tucci edited the article, denied that the statement was false, denied that the appellees knew or could reasonably have ascertained that the article was not true, and denied that the statement was defamatory. Subsequently, appellees filed an amended answer in which they denied that appellee Bergen wrote the article.

On April 17, 1979, appellees moved the court to grant summary judgment in their favor. This motion was granted by the trial court. Appellant filed a timely notice of appeal.

## II

Before considering the merits of appellant's assignment of error, it is appropriate to address the assertion by the appellees that this court is without jurisdiction to entertain this appeal.

In their appellate brief appellees contend that the order of the trial court granting summary judgment is not a final order pursuant to Civ. R. 54(B),[6] because this action was consolidated for trial with appellant's libel suit against the Plain Dealer (see footnote 5, *supra*), and because the record does not contain a final order in the *Plain Dealer* case.

The parties, however, admitted in oral argument before this court, and the records of the court of common pleas indicate, that final judgment was eventually rendered in the *Plain Dealer* case, and that no appeal was taken from that judgment.[7] Assuming, without deciding, that the consolidated actions against the Cleveland Press and Cleveland Plain Dealer constituted one action for purposes of Civ. R. 54(B), the decision of the trial court in the suit against the Cleveland Press became a final order

---

parties agreed that the jury rendered a verdict against appellant Hersch in the *Plain Dealer* lawsuit; that thereafter a motion for a new trial was overruled by the trial court; and, that time for appeal in the *Plain Dealer* case had expired.

[6] Civ. R. 54(B) provides:

"When more than one claim for relief is presented *in an action,* whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (Emphasis added.)

[7] The entry by the trial court, overruling the motion for a new trial in the *Plain Dealer* case, was dated August 4, 1981.

when judgment was rendered in the *Plain Dealer* case. The notice of appeal, though prematurely filed, need not be dismissed, but is considered as having been filed on the date that the judgment appealed from became final. App. R. 4(A). The jurisdictional argument by appellees is overruled.

### III

In the single error assigned by appellant for review by this court, he argues that the trial court erred in granting defendants' motion for summary judgment.

Civ. R. 56(C) prescribes the materials to be considered by the trial court in ruling upon a motion for summary judgment. The pertinent part of the rule states:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, *timely filed in the action,* show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *No evidence or stipulation may be considered except as stated in this rule.* * * *"* (Emphasis added.)

In the case at bar the parties filed the following relevant documents with the trial court: (1) appellant's complaint; (2) appellees' answer and amended answer; and (3) answers by appellee Bergen and appellee E. W. Scripps Company, to interrogatories filed by appellant.

In the case against the Plain Dealer, which was consolidated for trial with the case at bar, the appellees filed transcripts of the proceedings in *State of Ohio* v. *Peter Earle* and *State of Ohio* v. *Marvin H. Hersch.* The parties made reference to the foregoing documents in their briefs to the trial court in relation to the motion for summary judgment, and the trial court apparently considered these documents in ruling on the motion. With the record failing to disclose any objections entered by appellant to consideration of the trial transcripts filed in the consolidated case, we find that the transcripts were properly before the trial court in the case at bar. See *Brown* v. *Ohio Cas. Ins. Co.* (1978), 63 Ohio App. 2d 87 [17 O.O.3d 267]. However, the record does not disclose that the deposition of David Abbott, an employee of the Plain Dealer, was filed with the court of common pleas in either case, at any time prior to the granting of summary judgment.

The Ohio Supreme Court has held:

"A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State* v. *Ishmail* (1978), 54 Ohio St.2d 402 [8 O.O.3d 405], paragraph one of the syllabus.

This court is accordingly without authority to consider the deposition of David Abbott in reviewing the trial court's decision to grant summary judgment to the appellees.[8]

The appellant failed to adduce any evidence in opposition to the motion for summary judgment. The statements contained in the transcripts from the prosecutions of Earle and Hersch, being unchallenged, must be considered as true for purposes of summary judgment.

The appellant's complaint and the appellees' answer and amended answer were described previously herein. In his answers to the appellant's interrogatories, Mr. Bergen denied that he attended the appellant's criminal trial for bribery on July 6, 1977, and denied that he wrote the article which appeared in the Cleveland Press. In response to the interrogatories addressed to the E. W. Scripps

---

[8] This court, therefore, vacates, as improvidently granted, the May 28, 1981 motion decision of this court, insofar as it granted appellees leave to supplement the appellate record with the deposition of David Abbott.

Co., William Tanner, the managing editor of the Cleveland Press, stated that the company and its employees did not know who wrote, edited or reviewed the article.

In considering a motion for summary judgment, the moving party bears the burden of demonstrating the absence of a material dispute of fact. *State* v. *Licsak* (1974), 41 Ohio App. 2d 165 [70 O.O.2d 325]. The moving party is entitled to summary judgment only where it appears from the evidence and stipulations before the trial court "* * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *" Civ. R. 56(C).

The only portion of the Cleveland Press article which is alleged to have been false and defamatory is the following sentence[9]:

" [']Judge Zingale said yesterday, that Hersch's intent was not to subvert justice, but commented that he acted "stupidly." ['] " (Paragraph No. 7 of appellant's complaint.)

The complaint is susceptible of two interpretations: it may allege that it was defamatory for the Cleveland Press to repeat the statement that Hersch acted "stupidly," or it may allege that it was defamatory and false to quote Judge Zingale as saying that Hersch acted "stupidly." Both alternatives are considered below.

The elements of the tort of libel, under Ohio law, are that (a) the statement must be false[10]; (b) the statement must be defamatory towards the plaintiff[11]; (c) the statement must be in writing; (d) the statement must be published[12]; and (e) the defendant must be proven guilty of some degree of fault.[13] In addition, the defendant may plead and prove the existence of

---

[9] In an amended complaint contained in the record from the trial court, the appellant also alleges that the comments attributed to Judge Sweeney are false and defamatory. Since the record does not indicate that the amended complaint had been received for filing, and since the appellant's motion for leave to file the amended complaint was not ruled upon, we decline to consider whether the trial court could properly have disposed of these allegations by way of summary judgment. The appellant does not assign as error the failure of the trial court to grant his motion for leave to file the amended complaint.

[10] The rule making truth an affirmative defense was noted by the United States Supreme Court in *New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254, 278-280, and *Gertz* v. *Robert Welch, Inc.* (1974), 418 U.S. 323, 340-341, and the court held that the First Amendment requires a plaintiff to prove the element of falsity in a defamation action. Cf. R.C. 2739.02.

[11] The Court of Common Pleas of Hamilton County has stated that: "* * * The gravamen of the tort of defamation is whether or not the plaintiff has been lowered in the eyes of his

fellowman. * * *" *Motley* v. *Gombos* (1958), 78 Ohio Law Abs. 546, 549. A statement is considered defamatory and "libelous per se," if it appears from the words used, without the benefit of innuendo, "* * * that the publication reflects upon the character of such person by bringing him into ridicule, hatred or contempt, or affects him injuriously in his trade or profession. * * *" *Cleveland Leader Printing Co.* v. *Nethersole* (1911), 84 Ohio St. 118, paragraph two of the syllabus; quoted in *Becker* v. *Toulmin* (1956), 165 Ohio St. 549, 553 [60 O.O. 502].

[12] Cf. *Ward* v. *League for Justice* (1950), 57 Ohio Law Abs. 197, appeal dismissed (1950), 154 Ohio St. 367 [43 O.O. 264].

[13] In *Thomas H. Maloney & Sons, Inc.* v. *E. W. Scripps Co.* (1974), 43 Ohio App. 2d 105 [72 O.O.2d 313], this court held that where the plaintiff in a libel action is a "public figure," he or she must prove that the defendant published the defamatory statement with "actual malice" (*i.e.*, with knowledge of, or reckless disregard towards the falsity of the statement), but that where the plaintiff is not a public figure, the plaintiff need only prove that the defendant's conduct was negligent. In view of

a statutory or common law privilege to publish the defamatory statement.

In the case at bar, it is not disputed that the alleged statement was in writing and was published by the Cleveland Press. There is a material dispute of fact as to whether Mr. Bergen authored the article. Mr. Bergen, in the original joint answer to the complaint, admitted having written the article; however, in the amended answer and his answers to the appellant's interrogatories, he denied having written the article. Admissions contained in an original pleading which is subsequently amended may be offered in evidence, even though the original pleading serves no other function in the case. *Pennsylvania RR. Co.* v. *Girard* (C.A. 6, 1954), 210 F.2d 437, 440 [54 O.O. 243]; see 6 Wright and Miller, Federal Practice and Procedure: Civil (1971), Section 1476. No evidence was introduced tending to show whether or not Mr. Tucci edited the article. Consequently, the appellees have failed to show that, as a matter of law, reasonable minds could only conclude from the evidence before the trial court that defendant Bergen and defendant Tucci were not responsible for the article.

Similarly, the appellees did not adduce any evidence tending to show that they were innocent of any negligence, recklessness or malice in writing and printing the article in controversy.

Accordingly, they failed to meet their obligation to allege facts demonstrating that no material dispute of fact existed on this issue.

The appellees further contend that the evidence would support a finding that, as a matter of law, the statement in the article was either true or privileged and consequently, no cause of action was stated.

Assuming, *arguendo,* that the characterization of appellant's conduct by Judge Zingale was a statement of fact upon which a suit for defamation may be premised, rather than a nonactionable statement of opinion (Cf. *Gertz* v. *Robert Welch, Inc.* [1974], 418 U.S. 323, 339-340), this court is persuaded by the evidence before the trial court that the characterization of the conduct of attorney Hersch as "stupid" is either true or is an exceedingly charitable assessment of his behavior. In taking a principal role at a meeting in which the prosecuting witness and another witness were offered $500, purportedly as "compensation," in return for which the witnesses would agree not to testify and to drop the criminal charges against his client, Hersch's conduct must be viewed in light of the provisions of the Criminal Code[14] as well as ethical precepts and the rules of the Code of Professional Responsibility.[15]

---

our findings *infra* that the appellees failed to adduce any evidence on the issue of fault, we find it unnecessary to determine whether appellant is a public figure within the meaning of the *Maloney* case.

[14] This court is convinced that the unrefuted testimony of Mr. Earle and Mr. and Mrs. Basso was sufficient to convict attorney Hersch of bribery and obstruction of justice, see R.C. 2921.02 and 2921.32, footnotes 2 and 3, *supra.*

[15] "A lawyer shall not * * * [e]ngage in conduct that is prejudicial to the administration of justice." DR 1-102(A)(5).

"Continuation of the American concept that we are to be governed by rules of law re-

quires that the people have faith that justice can be obtained through our legal system. A lawyer should promote public confidence in our system and in the legal profession." EC 9-1.

"Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer. On occasion, ethical conduct of a lawyer may appear to laymen to be unethical. In order to avoid misunderstandings and hence to maintain confidence, a lawyer should fully and promptly inform his client of material developments in the matters being handled for the client. While a lawyer should guard against otherwise proper conduct that has a tendency to diminish public confidence in the legal system or in the legal profession, his duty to

From the admission made by attorney Hersch, himself, to the court in the Earle trial[16] and the undisputed testimony of Mr. and Mrs. Basso and Mr. Earle, it is apparent that the conduct of attorney Hersch could be described as unethical. This court concludes, as a matter of law, that the statement that attorney Hersch acted "stupidly" was either true or was a charitable characterization of his conduct, and consequently, was not defamatory. In appellant's lawsuit the trial court properly granted summary judgment to the appellees with respect to the allegation that the description of attorney Hersch's conduct as being "stupid" was libelous.

The only proof properly adduced[17] on the issue of whether Judge Zingale made the statement quoted in the article is the transcript from the prosecution of attorney Hersch for bribery and obstructing justice. In granting a motion by attorney Hersch for a judgment of acquittal, Judge Zingale said:

"I find from the testimony and the exhibits that although the way Mr. Hersch went about this matter, that he exercised poor judgment, and on its face there was impropriety in the letter to Judge Sweeney, referred to by the prosecutor's office.

"Upon hearing this matter, I find that Mr. Hersch did not have the requisite criminal intent to sustain the element of purpose with regard to these charges. I am therefore granting the motion for acquittal under Rule 29." (Hersch transcript [criminal trial].)

The Cleveland Press quoted Judge Zingale as having said "* * * Hersch's intent was not to subvert justice, but * * * that he acted 'stupidly.'" Construing the evidence most strongly in favor of the appellant, we assume, for purposes of this motion, that the Cleveland Press incorrectly quoted Judge Zingale, and that the incorrect quote is in fact a paraphrase of the judge's remarks.[18]

Under a previous holding of this court, to paraphrase and print a derogatory statement made by another person is not defamatory unless the defendant employed words conveying "greater opprobrium" than the original language used. *Williams* v. *P. W. Publishing Co.* (1957), 76 Ohio Law Abs. 404, 407 (holding that an accusation of "sex perversion" carries greater opprobrium than an accusation that the plaintiff sought to have "* * * 'sexual relations in an unnatural manner.'").

---

clients or to the public should never be subordinate merely because the full discharge of his obligation may be misunderstood or may tend to subject him or the legal profession to criticism. When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession." EC 9-2.

"Because the very essence of the legal system is to provide procedures by which matters can be presented in an impartial manner so that they may be decided solely upon the merits, any statement or suggestion by a lawyer that he can or would attempt to circumvent those procedures is detrimental to the legal system and tends to undermine public confidence in it." EC 9-4.

[16] See admission by attorney Hersch, *supra,* at pages 369-370.

[17] As noted *supra,* the deposition of David Abbott was not filed in the common pleas court, and therefore, does not become a part of the record on appeal. According to the parties' briefs in the trial court and on appeal, Mr. Abbott testified that he heard Judge Zingale use a form of the word "stupid" in reference to attorney Hersch.

[18] Since the Cleveland Press failed to show that it correctly quoted Judge Zingale's remarks, we find it unnecessary to ascertain to what extent a newspaper can be held liable for accurately repeating a defamatory statement made by another.

In the case at bar this court must determine whether a "stupid act" is substantially synonymous with an exercise of "poor judgment" and "impropriety," or whether it connotes a greater opprobrium.

The Cleveland Press article does not quote Judge Zingale as calling attorney Hersch "stupid"; this would imply a general lack of intelligence, a connotation clearly broader and more derogatory than to be charged with having exercised poor judgment. It is general knowledge, however, that an individual of average or superior intelligence is capable of committing "stupid" acts, *i.e.,* acts which do not conform to accepted modes, or acts of poor judgment. The terms "poor judgment" and "impropriety," when used in reference to a single act, are more precise and less informal than the phrase "a stupid act," but do not convey any less opprobrium.

It is the considered opinion of this court in view of the posture of the evidence in this case, that to be charged with having "acted stupidly" carries no greater opprobrium than to be charged with having committed an impropriety and with having exercised poor judgment. Under the authority of *Williams* v. *P. W. Publishing Co., supra,* this court is persuaded that, as a matter of law, the summary of Judge Zingale's remarks contained in the Cleveland Press article was not so false and defamatory as to serve as the basis for an action for libel.

Accordingly, the decision of the trial court granting summary judgment to the appellees is affirmed.

*Judgment affirmed.*

CORRIGAN, J., concurs in judgment only.

CELEBREZZE, J., dissents.