SOUTHERN STATES POLICE BENEVOLENT ASSOCIATION, INC., Marquenta A. Sands, Mike Bookser, Individually and on Behalf of the Bellevue Police Department, Charles Bollinger, Individually and on Behalf of the Parke County Sheriff's Department, Mark E. Hansen, Kevin Dizon, Irma Ellis, Dean R. Hess, Toby Darby, Keith Stonebraker, Steve Ellis, and Carlos Santillan, On Behalf of Themselves And All Others Similarly Situated, Plaintiffs,

v.

SECOND CHANCE BODY ARMOR, INC., Toyobo America, Inc., and Toyobo Co., Ltd., Defendants.

No. 1:04–CV–08.

United States District Court, W.D. Michigan, Southern Division.

May 17, 2004.

William Pitts Carr, Carr, Tabb, Pope & Freeman, LLP, Atlanta GA, Craig S. Neckers, Smith, Haughey, Rice & Roegge, PC, Grand Rapids, MI, for Plaintiffs.

Robert L. DeJong, Miller Canfield, Paddock & Stone, PLC, Grand Rapids, MI, W. Mack Faison, Miller Canfield, Paddock & Stone, PLC, Detroit, MI, Joanne Geha Swanson, Kerr, Russell & Weber, PLC, Detroit, MI, for Defendants.

## OPINION

QUIST, District Judge.

### Background

Plaintiffs, various individual law enforcement officers and organizations represent-

ing law enforcement officers, have filed a class action complaint against Second Chance Body Armor, Inc. ("Second Chance"), alleging that Second Chance manufactured and sold certain protective ballistic vests to Plaintiffs and the putative class which are defective and dangerous. Specifically, Plaintiffs allege that the lightweight fiber used in the vests, known as "Zylon", may be degraded when exposed to various conditions, resulting in a loss of protection for users of the vests. Plaintiffs have also sued Toyobo America, Inc. ("Toyobo") and Toyobo Co., Ltd., which Plaintiffs allege manufactured and sold the Zylon material used in the vests.

Presently before the Court is Toyobo's motion to dismiss for lack of subject matter jurisdiction. Toyobo contends that the Court lacks subject matter jurisdiction over this action, which is based solely upon diversity of citizenship, because the value of each putative class member's claim, based upon either a damage award or injunctive relief (replacement of the vest), is $1,030, and such claims may not be aggregated to meet the jurisdictional threshold of $75,000. Plaintiffs contend that the amount in controversy requirement is met because the value of the injunctive relief—specifically, the notice of alleged defects to class members—exceeds $75,000.

## Motion Standard

Pursuant to 28 U.S.C. § 1332(a), federal courts have jurisdiction over disputes between citizens of different states where the amount in controversy, exclusive of interest, "exceeds the sum or value of $75,000." A party facing a motion to dismiss for lack of subject matter jurisdiction is required to demonstrate the existence of jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990). "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff

controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) (footnote omitted). In addition, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 289, 58 S.Ct. at 590. The amount in controversy is measured at the time the complaint was filed. *Klepper v. First Am. Bank,* 916 F.2d 337, 340 (6th Cir.1990).

## Discussion

At the outset, the Court finds it helpful to identify the controlling legal principals regarding the amount in controversy in diversity class action cases as well as the points of agreement and dispute between the parties. First, "separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969). This rule applies in a Rule 23(b)(3) class action based upon diversity of citizenship. *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (2000). Thus, any plaintiff whose individual claim does not meet the jurisdictional amount must be dismissed from the suit. *Id.* at 301, 94 S.Ct. at 512. In *Krieger v. Gast,* 197 F.R.D. 310 (W.D.Mich.2000), this Court sided with those courts which have concluded that the holding in *Zahn* remains unaffected by the passage of 28 U.S.C. § 1367. Plaintiffs do not argue with that conclusion, and the Court finds no reason to reexamine its analysis in this case because Plaintiffs do not dispute that no putative class member has a claim greater than the jurisdictional amount. That is, the amount potentially recoverable by each class member is approximately $1,030, representing the purchase price of the vests. Moreover, Plaintiffs do not dis-

pute that these claims are separate and distinct claims that may not be aggregated. Second, a court may consider other possible damage components, including, under Michigan law, exemplary damages and, in some circumstances, the amount of a potential award of attorneys' fees. *See Krieger*, 197 F.R.D. at 318 (exemplary damages may be considered if warranted by the circumstances); *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 779 (5th Cir.2002) (potential statutory award of attorneys' fees may be considered in jurisdictional amount determination). However, Plaintiffs make no claim that they are entitled to an award of exemplary damages, nor have they cited any statutory basis for an award of attorneys' fees in this case. Third, in an action seeking injunctive relief, a court determines whether the jurisdictional requirement is met by considering the value of the right sought to be protected by equitable relief or the extent of the injury to be prevented. *See Smith v. Adams*, 130 U.S. 167, 175, 9 S.Ct. 566, 569, 32 L.Ed. 895 (1889). Finally, in certain circumstances, aggregation is permitted where the class members' claims are "integrated," or, in other words, arise out of a common and undivided interest. *Krieger*, 197 F.R.D. at 316 (citing *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir. 1983)).

Plaintiffs' requests for damages or replacement of the vests do not arise from a common and undivided right or interest that would support aggregation of claims. However, Plaintiffs contend that they meet the jurisdictional threshold because part of the injunctive relief they seek—their request that Defendants be required to send notice to the class—exceeds $75,000, regardless of whether the value of the notice is assessed from their viewpoint or from Defendants' viewpoint. Alternatively, Plaintiffs contend that they meet the jurisdictional threshold, even without aggregation, because they are seeking to protect

their lives by requiring replacement of the defective vests which, Plaintiffs assert, are worth far more than $75,000. Plaintiffs also contend that they meet the jurisdictional requirement if the relief they request is valued from Defendants' point of view because Plaintiffs have a common and undivided interest in the notice and, considering the investigation, testing, analysis, and advertising costs Defendants will incur in providing the notice, Defendants' cost of compliance will exceed $75,000. Toyobo counters that the applicable rule in the Sixth Circuit is that the value of injunctive relief must be assessed from the plaintiff's point of view. Toyobo further asserts that the requested notice does not provide a basis for valuing the amount in controversy in this case and is not an interest that is common and undivided among Plaintiffs. Thus, the specific issues raised in this motion are: (1) the point of view from which injunctive relief should be valued; and (2) the relief that may be "valued" for purposes of ascertaining the amount in controversy.

With regard to the first issue—the point of view from which injunctive should be valued—courts have generally taken three approaches: (1) the value from the plaintiff's point of view; (2) the value from the defendant's point of view; and (3) the value from either viewpoint. *Farkas v. Bridgestone/Firestone, Inc.*, 113 F.Supp.2d 1107, 1113 (W.D.Ky.2000) (summarizing different approaches but declining to "adopt a specific approach"). Although district courts within the Sixth Circuit have reached different conclusions about the appropriate perspective for valuing injunctive relief, most courts, including two courts within this district, have followed the rule that the value of injunctive relief must be determined from the plaintiff's point of view. *See Nelson v. Assocs. Fin. Servs. of Ind., Inc.*, 79 F.Supp.2d 813, 820 (W.D.Mich.2000) (determining the value of

the injunctive relief to the plaintiffs); *United Rentals (North America), Inc. v. Keizer,* No. 1:00cv831, 2001 U.S. Dist. LEXIS 3438, at *10–11 (W.D.Mich. Mar. 12, 2001) ("As plaintiff notes, however, governing case law clearly holds that a determination of the amount in controversy is measured from the plaintiff's perspective."); *Sherwood v. Microsoft Corp.,* 91 F.Supp.2d 1196, 1203 (M.D.Tenn.2000) (stating that "the jurisdictional amount is to be determined by the plaintiffs' assigned value of their claims or the value of the right sought to be enforced by the plaintiffs"); *McIntire v. Ford Motor Co.,* 142 F.Supp.2d 911, 922 (S.D.Ohio 2001) (concluding that the amount in controversy must be valued from the perspective of the plaintiffs); *Olden v. LaFarge Corp.,* 203 F.R.D. 254, 258 (E.D.Mich.2001) ("In the case of injunctive relief, the amount in controversy is the 'monetary value of the benefit that would flow to the plaintiff if the injunction were granted.'") (quoting *Smith v. GTE Corp.,* 236 F.3d 1292, 1309 (11th Cir.2001)). Several of these courts have concluded, based upon the decisions in *Pennsylvania Railroad Co. v. City of Girard,* 210 F.2d 437 (6th Cir.1954), and *Goldsmith v. Sutherland,* 426 F.2d 1395 (6th Cir.1970), that the plaintiff's perspective is the rule to be applied in the Sixth Circuit. *See, e.g., McIntire,* 142 F.Supp.2d at 921–22; *Reedy v. Philips Elecs.,* No. C–3–97–231, 1998 U.S. Dist. LEXIS 22982, at *18–24 (S.D.Ohio. Mar. 18, 1998); *Engel v. Chevron Corp.,* No. 3:96–CV–377, 1996 WL 1687454, at *5 (E.D.Tenn. June 21, 1996).

In *City of Girard,* the city brought an action in state court against the railroad for the cost of removal of ashes and debris that had accumulated on a street in the city as a result of the railroad's negligence. The railroad removed the case to federal court on the basis of diversity jurisdiction. In addition to seeking damages for the cleanup, the city also requested a permanent injunction prohibiting the railroad from allowing ashes to be dumped on the street and requiring the railroad to construct a retaining wall. The district court awarded the city $1,200 in damages and granted the city's request for injunctive relief. On appeal, the Sixth Circuit *sua sponte* raised the issue of whether diversity jurisdiction existed. Because the amount claimed by the city was less than the then-existing jurisdictional amount, the court examined the value of the permanent injunction. The court found that the value of the controversy was the appropriate consideration, "measurable by the expense to which the plaintiff will reasonably be put through the years and by the value of the right sought to be protected." *Id.* at 439. The court also relied upon an earlier case, *Wisconsin Electric Co. v. Dumore Co.,* 35 F.2d 555 (6th Cir.1929), for the proposition that the amount in controversy "depends 'not alone upon the pecuniary damage resulting from the acts complaint of, but also upon the value of the rights which plaintiff seeks to have protected.'" *City of Girard,* 210 F.2d at 439 (quoting *Wisc. Elec. Co.,* 35 F.2d at 556). The Sixth Circuit cited *City of Girard* with approval in *Goldsmith v. Sutherland,* 426 F.2d 1395 (6th Cir.1970), for the proposition that "the rule is that in injunction actions, the amount in controversy is not the amount that the plaintiff might recover at law, but rather the value of the right to be protected or the extent of the injury to be prevented." *Id.* at 1398.

Other courts have adopted the "either viewpoint" approach, which allows the amount in controversy to be determined based upon the value of the injunctive relief to the plaintiff or by using the defendant's viewpoint, which is generally the defendant's cost of compliance with the requested injunctive relief. For example, in *In re Cardizem CD Antitrust Litigation,* 90 F.Supp.2d 819 (E.D.Mich.1999), a

case upon which Plaintiffs rely, the court applied this approach, stating:

> This rule serves "the purpose of a jurisdictional amount in controversy requirement—to keep trivial cases away from the federal court system." 14B Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction, § 3703 at 124–25 (West 3d ed.1998). "Because the jurisdictional amount was enacted primarily to measure substantiality of the suit, the question of whether the controversy is substantial should not be answered unqualifiedly by looking only to the value of that which the plaintiff stands to gain or lose." 15 James Wm. Moore et al., *Moore's Federal Practice* § 102.109[4] at 102–200 (Matthew Bender 3d ed.). Under this "either viewpoint" approach, the Court considers the pecuniary result to either party and considers both "the value to the plaintiff of conducting his ... personal affairs free from the activity sought to be enjoined" and the costs of compliance the defendant will incur if the injunction is granted. 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure:* Jurisdiction, § 3708 at 239 (West 3d ed.1998).

*Id.* at 834–35. *See also Melkus v. Allstate Ins. Co.,* 503 F.Supp. 842, 846 (E.D.Mich. 1980) (finding the either viewpoint approach to be the better approach). A third view, espoused by the court in *Bedell v. H.R.C. Ltd.,* 522 F.Supp. 732 (E.D.Ky. 1981), is that the amount in controversy is determined from the viewpoint of the party seeking to invoke federal jurisdiction. *Id.* at 735 (stating that the "party invoking jurisdiction" viewpoint "is the one that prevails in this district, and probably the Sixth Circuit").

■ Based upon its review of the relevant case law, including the Sixth Circuit's decisions in *City of Girard* and *Goldsmith,* the Court concludes that the rule in the Sixth Circuit is that a request for injunctive relief must be valued from the plaintiff's viewpoint in determining the amount in controversy. This rule makes the most sense, especially in class action cases based upon diversity of citizenship, because use of the defendant's point of view could allow either party to easily avoid the rule of non-aggregation by relying on a nominal request for injunctive relief in a case involving minimal damage claims. *See Nelson,* 79 F.Supp.2d at 818. On this point, the Court finds the Third Circuit's reasoning in *Packard v. Provident National Bank,* 994 F.2d 1039 (3d Cir.1993), persuasive:

> In a diversity-based class action seeking primarily money damages, allowing the amount in controversy to be measured by the defendant's cost would eviscerate *Snyder's* holding that the claims of class members may not be aggregated in order to meet the jurisdictional threshold. We will not permit plaintiffs to do indirectly that which they cannot do directly. Moreover, we have stated that a plaintiff may not turn what is essentially a legal claim into an equitable one merely by demanding an injunction requiring the payment of money. Here virtually all of the relief sought is remediable by money damages. The only truly equitable relief sought in this case is an order requiring Mellon [Bank] to provide adequate notice of its sweep fees to trust beneficiaries and to tie future sweep fees to the cost of providing the service.

*Id.* at 1050.

Having concluded that the amount in controversy must be determined based upon the value of the rights Plaintiffs seek to protect, the Court must next determine that value. Obviously, the replacement cost of the vests (approximately $1,030), or an award of damages in lieu of replace-

ment, is at least a component of the value of each class member's claim, but alone it falls far short of the jurisdictional amount. As noted above, Plaintiffs contend that their request that Defendants be required to provide notice of the defects in the vests to class members provides a basis for valuing their claims in excess of the jurisdictional amount. Plaintiffs contend that the request for notice is an integrated claim possessed by all of the class members. Alternatively, Plaintiffs contend that their individual claims exceed $75,000, even if aggregation is not permitted, because they are seeking to protect their lives through replacement of the defective vests.

■ Neither argument is persuasive. The latter argument must be rejected because there is no reasonable basis for using the value of human life as an indicator of the value of the claims in this case. At bottom, as set forth in Plaintiffs' First Amended Class Action Complaint, this case is about an award of damages for, or in the alternative replacement of, defective vests. There is no claim for death or bodily injury caused by defective vests, and such claims are expressly excluded from this action. (1st Am.Compl.¶ 54.) If Plaintiffs are successful in obtaining the full measure of the relief they seek, the value of that relief will be limited to the approximate replacement value of the vests. Moreover, in deciding this case, there will be no need for the Court or a jury to consider the value of human life to resolve any issue of law or fact because any claims for death or injury are properly excluded from the class claims. Because the value of human life is not at issue in this case, it does not provide a basis for determining the amount in controversy. *Cf. Goldsmith*, 426 F.2d at 1398 (concluding that the plaintiff had not shown any measurable injury for purposes of valuing requested injunctive relief restraining the defendant from enforcing an order excluding the plaintiff from entering an army

reservation because the plaintiff had not requested permission to enter the reservation after the exclusion order, which left open the possibility of admission upon request, was issued).

■ Plaintiffs' primary argument regarding the value of the requested notice to the class members fails for several reasons. First, regardless of whether the request for notice can be considered an integrated claim held in common by the class members, the notice does not constitute the ultimate relief to the class members, but is merely a means by which the actual relief sought—compensatory damages or replacement of the vests—can be obtained. The requested injunctive relief in *Nelson, supra*, was similar in nature. There, the plaintiff alleged that the defendant violated usury and other mortgage-related state laws and requested that the defendant be required to reimburse class members for any penalties paid. The plaintiff also requested that the defendant be enjoined from charging the penalty on any outstanding loans. The court concluded that the plaintiff was seeking essentially compensatory relief and, therefore, the injunctive relief was not separable from the compensatory relief. The court stated, "Because the equitable relief sought is only a means through which the individual claim may be satisfied, the ban on aggregation applies to the equitable as well as the monetary relief." *Nelson*, 79 F.Supp.2d at 820. Similarly, the injunctive relief in this case (notice) is interrelated with the compensatory relief sought on an individual basis for the class members and does not provide a separate basis for aggregation. *See also Packard*, 994 F.2d at 1050 ("[A] plaintiff may not turn what is essentially a legal claim into an equitable one merely by demanding an injunction requiring the payment of money.") Second, Plaintiffs have failed to provide any

basis for valuing the request for notice. Thus, even if the notice could be considered as an independent element for valuing Plaintiffs' claims, Plaintiffs have failed to carry their burden of showing how the notice should be valued. Finally, Plaintiffs' request for injunctive relief is not a common and undivided claim among the class members that may be aggregated. In a case such as this, where the plaintiff seeks both injunctive and monetary relief, "the proper focus . . . is not influenced by the type of relief requested, but rather . . . depend[s] upon the nature and value of the right asserted." *Snow v. Ford Motor Co.*, 561 F.2d 787, 790 (9th Cir.1977). In this case, Plaintiffs assert the right of individual class members to damages in the approximate amount of the purchase price for the defective vests, or alternatively, to replacement vests. Each Plaintiff is entitled to the same relief regardless of whether they prosecute their claims as individual actions or as a class action. That relief is unaffected by the presence or absence of other plaintiffs or class members. Therefore, aggregation is inappropriate.[1]

█ Finally, although the Court concludes that the valuation from the plaintiff's viewpoint is the correct standard to apply in the Sixth Circuit for determining the amount in controversy, the Court notes that Plaintiffs have failed to show that their claims would exceed the jurisdictional threshold even under a defendant's viewpoint rule. Assuming that Defendants' total cost of compliance in providing notice to class members exceeds the jurisdictional amount, there is still no basis for aggregation, as Plaintiffs would have it. As discussed above, the right asserted in this case is Plaintiffs' right to damages or replacement of the defective vests. The fact that Plaintiffs have requested injunctive relief that is ancillary to their individual, non-aggregable claims does not transform this case into one which meets the $75,000 jurisdictional requirement. *McNamara v. Philip Morris Cos.*, No. Civ. A. 98–CV–4430, 1999 WL 554592, at *4–5 (E.D.Pa. July 9, 1999). Plaintiffs would thus be required to show that Defendants' cost of compliance would exceed $75,000 per class member. Plaintiffs have not made such a showing. Accordingly, Plaintiffs have failed to carry their burden of demonstrating jurisdiction.

### Conclusion

For the foregoing reasons, the Court will grant Defendant Toyobo America, Inc.'s motion to dismiss for lack of subject matter jurisdiction.

An Order consistent with this Opinion will be entered.

---

1. Plaintiffs cite *Loizon v. SMH Societe Suisse de Microelectronics, Et Horologerie SA*, 950 F.Supp. 250 (N.D.Ill.1996), and *Earnest v. General Motors Corp.*, 923 F.Supp. 1469 (N.D.Ala.1996), for the proposition that a defendant's cost of compliance in sending notice to class members is relief that only a class, and not individual class members, may request. The Court declines to follow these cases because it has already determined that the plaintiff's point of view is the rule in the Sixth Circuit and because Plaintiffs' request for notice in this case is merely incidental to the primary, non-aggregable relief sought by Plaintiffs.